Revised March 25, 2002

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-60855

_____

KATHRYN CHESHIRE

Petitioner - Appellant

v.

COMMISSIONER OF INTERNAL REVENUE

Respondent - Appellee

_____

Appeal from the Decision of the United States Tax Court
_____

February 8, 2002

Before KING, Chief Judge, DAVIS, Circuit Judge, and VANCE,
District Judge.[*]

KING, Chief Judge:

The Commissioner of Internal Revenue assessed a tax
deficiency and associated penalties against Petitioner -
Appellant Kathryn Cheshire.  In the United States Tax Court,
Cheshire asserted claims for innocent spouse relief from the tax
deficiency and penalties under § 6015(b), (c), and (f) of the

_____

    [*]  District Judge of the Eastern District of Louisiana,
sitting by designation.

Internal Revenue Code. 26 U.S.C. § 6015 (Supp. 2001). The Tax Court denied Cheshire's request for innocent spouse relief, and Cheshire appeals that denial. For the following reasons, we AFFIRM the judgment of the Tax Court.

## I. Factual History

The facts in this case are undisputed. Kathryn Cheshire ("Appellant") married David Cheshire in 1970. More than twenty years later, Mr. Cheshire retired from Southwestern Bell Telephone Company effective January 1, 1992, and received the following retirement distributions in 1992:

| | |
|---|---|
| Lump sum distribution | $199,771 |
| LESOP for salaried employees | 5,919 |
| Savings plan for salaried employees | 23,263 |
| ESOP | 971 |
| TOTAL | $229,924 |

Of the $229,924 total distribution, $42,183 was rolled over into a qualified account and is not subject to federal income tax. Mr. Cheshire deposited $184,377 of the retirement distributions into the Cheshires' joint checking account, which earned $1168 in interest for 1992.[1] Appellant knew of Mr. Cheshire's receipt of $229,924 in retirement distributions and of the $1168 in interest earned on the distributions.

---

[1]  The amounts rolled over into the qualified account ($42,183) and deposited in the joint checking account ($184,377) account for only $226,560 of the retirement distributions. The unaccounted-for remainder ($3364), although mysterious, is not significant enough to affect our analysis of the case.

The Cheshires made several large disbursements from the retirement distributions in their joint checking account. They withdrew $99,425 from this account to pay off the mortgage on their marital residence, and they withdrew an additional $20,189 to purchase a new family car, a 1992 Ford Explorer. Mr. Cheshire also used the retirement proceeds to provide start-up capital for his new business, to satisfy loans taken out to acquire a family truck and an automobile for the Cheshires' daughter, to pay family expenses, and to establish a college fund for the Cheshires' daughter. Appellant knew of all these expenditures.

Appellant and Mr. Cheshire filed a joint federal income tax return, prepared by Mr. Cheshire, for 1992. On line 17a of this return, they reported the $199,771.05 in retirement distributions[2] but claimed only $56,150.12 of this amount as taxable. Before signing the return, Appellant questioned Mr. Cheshire about the tax consequences of the retirement distributions. Mr. Cheshire replied that John Daniel Mican, a certified public accountant, advised Mr. Cheshire that retirement proceeds used to pay off a mortgage are nontaxable. Appellant accepted this answer and made no further inquiries prior to signing the return on March 14, 1993. In fact, Mr. Cheshire had not consulted Mican, and all retirement proceeds that are not

---

[2] This number corresponds to the amount of the lump sum distribution and excludes the LESOP, ESOP, and savings plan distributions.

rolled over into a qualified account are taxable. Because of Mr. Cheshire's persistent problems with alcohol, the Cheshires permanently separated on July 13, 1993, and they divorced seventeen months later. The divorce decree awarded Appellant unencumbered title to the marital residence and to the Ford Explorer.

The Commissioner of Internal Revenue (the "Commissioner") audited the Cheshires' 1992 return and determined that Mr. Cheshire had received taxable retirement distributions of $187,741 – the difference between the total distributions ($229,924) and the rollover ($42,183). Thus, the Cheshires had understated the amount of their taxable distributions by $131,591. The Commissioner also determined that the Cheshires had underreported the interest income earned on the retirement distributions by $717. Because of these inaccuracies, the Commissioner imposed a penalty under § 6662(a) of the Internal Revenue Code.[3]

## II.  Procedural History

---

[3]  Section 6662(a) provides:
> If this section applies to any portion of an underpayment of tax required to be shown on a return, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which this section applies.

26 U.S.C. § 6662(a) (Supp. 2001).

4

Appellant commenced this action in the Tax Court. She conceded that $131,591 of the retirement distributions and the corresponding earned interest were improperly excluded from taxable income. She claimed, however, that she was entitled to relief as an innocent spouse under § 6015(b),[4] § 6015(c),[5] or

---

[4] Section 6015(b)(1) provides:
> [I]f—
> (A) a joint return has been made for a taxable year;
> (B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;
> (C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;
> (D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and
> (E) the other individual elects . . . the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,
> then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.
26 U.S.C. § 6015(b)(1) (Supp. 2001).

[5] Section 6015(c)(1) provides:
> [I]f an individual who has made a joint return for any taxable year elects the application of this subsection, the individual's liability for any deficiency which is assessed with respect to the return shall not exceed the portion of such

5

§ 6015(f)[6] of the Internal Revenue Code. 26 U.S.C. § 6015. Prior to trial, the Commissioner conceded that Appellant qualified for innocent spouse relief with respect to the LESOP distribution ($5919), the savings plan distribution ($23,262), and the ESOP distribution ($971). Consequently, the taxable income from the retirement distributions and the corresponding earned interest remaining in dispute totaled $101,438 and $691, respectively. These amounts roughly correspond to the improperly deducted amounts that the Cheshires used to pay off their mortgage.

---

deficiency properly allocable to the
individual under subsection (d).
26 U.S.C. § 6015(c)(1) (Supp. 2001). The general rule under subsection (d) is that:

[A]ny item giving rise to a deficiency on a
joint return shall be allocated to
individuals filing the return in the same
manner as it would have been allocated if the
individuals had filed separate returns for
the taxable year.
26 U.S.C. § 6015(d)(3)(A) (Supp. 2001).

[6]    Section 6015(f) provides:
[I]f–
(1) taking into account all the facts
and circumstances, it is inequitable to
hold the individual liable for any
unpaid tax or any deficiency (or any
portion of either); and
(2) relief is not available to such
individual under subsection (b) or (c),
the Secretary may relieve such individual of
such liability.
26 U.S.C. § 6015(f) (Supp. 2001).

The Tax Court majority, consisting of twelve judges, denied Appellant relief under § 6015(b), (c), and (f).  Cheshire v. Comm'r, 115 T.C. 183 (2000).  The Tax Court found that Appellant failed to establish that she "did not know, and had no reason to know" of the tax understatement as required for relief under § 6015(b)(1)(C).  Id. at 193.  The Tax Court also found that Appellant was not entitled to relief under § 6015(c) because she had "actual knowledge . . . of any item giving rise to a deficiency" within the meaning of § 6015(c)(3)(C).[7]  Id. at 197. Finally, the Tax Court held that the Commissioner did not abuse his discretion in denying Appellant equitable relief under § 6015(f) with respect to the retirement distributions and the interest income, as well as the § 6662(a) penalty associated with the interest income.[8]  Id. at 198.

---

[7]     Section 6015(c)(3)(C) provides:
       If the Secretary demonstrates that an
       individual making an election under this
       subsection had actual knowledge, at the time
       such individual signed the return, of any
       item giving rise to a deficiency (or portion
       thereof) which is not allocable to such
       individual under subsection (d), such
       election shall not apply to such deficiency
       (or portion).
26 U.S.C. § 6015(c)(3)(C) (Supp. 2001).

[8]   The Tax Court granted Appellant equitable relief with respect to the portion of the § 6662(a) penalty associated with the retirement distributions, however.  Id. at 198-99.

7

### III.  The Statutory Scheme

Generally, spouses who choose to file a joint return are subject to joint and several liability for tax deficiencies under the Internal Revenue Code.  26 U.S.C. § 6013(d)(3) (Supp. 2001). Recognizing that joint and several liability may be unjust in certain circumstances, Congress authorized relief from such liability under the "innocent spouse" provision, 26 U.S.C. § 6015.  Section 6015 provides three distinct types of relief for taxpayers who file joint returns.[9]  First, § 6015(b) provides relief for all joint filers who satisfy the five requirements listed in that section.[10]  Second, § 6015(c) allows a spouse who filed a joint tax return to elect to limit her income tax liability for that year to her separate liability amount.[11] Section 6015(c) applies only to taxpayers who are no longer married, are legally separated, or do not reside together over a twelve-month period.  26 U.S.C. § 6015(c)(3)(A)(i).  Furthermore, a spouse who had actual knowledge of an item giving rise to a

---

[9]  Relief under the former innocent spouse statute, § 6013(e), was difficult to obtain, so Congress repealed § 6013(e) and enacted a new provision, § 6015, in 1998.  See S. REP. NO. 105-174, at 55 (1998); H.R. REP. NO. 105-364(I), at 61 (1998).  New § 6015(b)(1) provides similar relief to that available under former § 6013(e).  New § 6015(c) and (f), however, are new forms of relief.

[10]  See supra note 4 for complete text of 26 U.S.C. 6015(b)(1).

[11]  See supra note 5 for complete text of 26 U.S.C. 6015(c)(1).

deficiency at the time that spouse signed the return may not seek relief under § 6015(c).  26 U.S.C. § 6015(c)(3)(C).[12]

Finally, a taxpayer may seek relief as an "innocent spouse" under § 6015(f), which authorizes the Secretary of the Treasury (the "Secretary") or his delegate to grant equitable relief from joint and several liability when relief is unavailable under § 6015(b) and (c).[13]  Except for the knowledge requirement of § 6015(c)(3)(C) (the provision disallowing election of separate liability to a spouse with actual knowledge of the item giving rise to the deficiency), the taxpayer bears the burden of proving that she has met all the prerequisites for innocent spouse relief.  See Reser v. Comm'r, 112 F.3d 1258, 1262-63 (5th Cir. 1997).  Section 6015(c)(3)(C) explicitly places the burden of proof on the Secretary.

## IV.  Standard of Review

This court reviews decisions of the Tax Court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury."  26 U.S.C. § 7482(a)(1) (1989 & Supp. 2001).  Thus, we review issues of law de novo and findings of fact for clear error.  Park v. Comm'r, 25 F.3d 1289,

---

[12]  See supra note 7 for complete text of 26 U.S.C. 6015(c)(3)(C).

[13]  See supra note 6 for complete text of 26 U.S.C. 6015(f).

9

1291 (5th Cir. 1994).  The Tax Court's determination that a spouse is not entitled to innocent spouse relief is a finding of fact that this court reviews for clear error.  Reser, 112 F.3d at 1262.

## V.  Section 6015(b) Relief

Section 6015(b)(1) provides innocent spouse relief if the taxpayer satisfies all of the five requirements listed in that section.[14]  In this case, the parties concede that Appellant satisfied the requirements of subsections (A), (B), and (E) of § 6015(b)(1).  Thus, the § 6015(b) issue presented by this case is whether Appellant satisfied the requirements of subsections (C) and (D).  We conclude that Appellant has not satisfied the requirement of subsection (C) and thus is not entitled to relief under § 6015(b).

Subsection (C) allows for innocent spouse relief only if the spouse "establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement."[15]  26 U.S.C. § 6015(b)(1)(C).  Originally, the innocent spouse provision (formerly codified at § 6013(e)(1))

---

[14]  See supra note 4 for complete text of 26 U.S.C. 6015(b)(1).

[15]  Because current subsection (C) of § 6015(b)(1) is virtually identical to former subsection (C) of § 6013(e)(1), we may look to cases construing § 6013(e)(1)(C) for help in construing § 6015(b)(1)(C).  See Butler v. Comm'r, 114 T.C. 276, 283 (2000).

10

granted relief only in cases involving omitted income, i.e., cases in which the tax return failed to report taxable income. Since the enactment of the original provision, courts have agreed that in omitted income cases, the spouse's actual knowledge of the underlying transaction that produced the income is sufficient to preclude innocent spouse relief (the "knowledge-of-the-transaction test"). Reser, 112 F.3d at 1265.[16] In 1984, the innocent spouse provision was expanded to include relief in erroneous deduction cases, i.e., cases in which an incorrect deduction results in an understatement of taxable income. Park, 25 F.3d at 1292. The Tax Court applies the knowledge-of-the-transaction test to both types of cases, see Bokum v. Comm'r, 94 T.C. 126, 151 (1990), though some circuits have adopted an alternate test for erroneous deduction cases.[17] See, e.g., Price v. Comm'r, 887 F.2d 959, 965 (9th Cir. 1989); Reser, 112 F.3d at 1267 (Fifth Circuit case).

---

[16] The knowledge-of-the-transaction test conflicts with the plain meaning of § 6015(b)(1)(C), which limits relief to spouses with no knowledge of the understatement. Along with other courts, this court has concluded that this deviation from plain meaning is justified because it avoids "acceptance of an ignorance of the law defense." Sanders v. United States, 509 F.2d 162, 169 n.14 (5th Cir. 1975); see also Price v. Comm'r, 887 F.2d 959, 963 n.9 (9th Cir. 1989).

[17] The Tax Court has suggested that if the case is appealable to a circuit that has adopted a different knowledge test for erroneous deduction cases, it will apply that circuit's knowledge test rather than the knowledge-of-the-transaction test. See Bokum, 94 T.C. at 151 (declining to follow the Ninth Circuit's knowledge standard in erroneous deduction cases "except in those instances where appeal lies to that Court of Appeals").

11

The Ninth Circuit was the first circuit to adopt an alternative knowledge test for erroneous deduction cases. In Price, the Ninth Circuit established that a spouse fails to satisfy the § 6015(b)(1)(C) knowledge requirement in erroneous deduction cases if "a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the substantial understatement." 887 F.2d at 965. The Ninth Circuit reasoned that since erroneous deductions are necessarily reported on a tax return, any spouse who signs the joint return is thereby put on notice that an income-producing transaction occurred. Id. at 963 n.9. Thus, in erroneous deduction cases, it would be illogical to bar recovery for spouses with mere knowledge of the transaction as this would preclude any spouse from obtaining relief under § 6015(b). Id. The Ninth Circuit noted that "adoption of such an interpretation would do violence to the intent Congress clearly expressed when it expanded coverage of the provision to include relief for spouses from deficiencies caused by deductions for which there is no basis in fact or law." Id.

Thus, under the Price approach, actual knowledge of the underlying transaction, standing alone, is not enough to preclude innocent spouse relief under § 6015(b)(1)(C) in erroneous deduction cases. However, Price notes that if the spouse knows "virtually all of the facts pertaining to the transaction which underlies the substantial understatement," then her defense "is

12

premised solely on ignorance of law," and "she is considered <u>as a matter of law</u> to have reason to know of the substantial understatement." <u>Id.</u> at 964 (emphasis added).

This court adopted the <u>Price</u> approach and reasoning in <u>Reser</u>.[18] <u>See</u> 112 F.3d at 1267. Accordingly, in erroneous deduction cases, this court questions whether the spouse "knew or had reason to know that the <u>deduction</u> in question would give rise to a substantial understatement of tax on the joint return." <u>Id.</u> (emphasis in original). However, if the spouse knows enough about the underlying transaction that her innocent spouse defense rests entirely upon a mistake of law, she has "reason to know" of the tax understatement as a matter of law. <u>See</u> <u>Park</u>, 25 F.3d at 1293-94 (noting that ignorance of the law cannot establish an innocent spouse defense to tax liability); <u>Sanders v. United States</u>, 509 F.2d 162, 169 & n.14 (5th Cir. 1975). If "reason to know" cannot be determined as a matter of law, the proper factual inquiry is "whether a reasonably prudent taxpayer in the spouse's position at the time she signed the return could be expected to know that the stated liability was erroneous or that further investigation was warranted." <u>Reser</u>, 112 F.3d at 1267.

---

[18] The Second, Seventh, Eighth, and Eleventh Circuits have also followed the Ninth Circuit's decision in <u>Price</u>. <u>See</u> <u>Resser v. Comm'r</u>, 74 F.3d 1528, 1535-36 (7th Cir. 1996); <u>Bliss v. Comm'r</u>, 59 F.3d 374, 378 n.1 (2d Cir. 1995); <u>Kistner v. Comm'r</u>, 18 F.3d 1521, 1527 (11th Cir. 1994); <u>Erdahl v. Comm'r</u>, 930 F.2d 585, 589 (8th Cir. 1991).

13

In this case, the Cheshires reported the receipt of $199,771.05 in retirement distributions on line 17a of their joint tax return.  On line 17b, they reported $56,150.12 as the taxable amount of those retirement distributions.  Mr. Cheshire led Appellant to believe that he calculated this amount of taxable income by properly deducting the money placed in a qualified account ($42,183) and the money used to pay off the mortgage on their home ($99,425).  In fact, only the money placed in a qualified account was properly excludable from the Cheshires' taxable income.  Appellant argues that these facts present a case of erroneous deduction and that the knowledge-of-the-incorrect-deduction standard is therefore applicable.  The Commissioner argues that this is a case of omitted income and that the knowledge-of-the-transaction test is therefore applicable.

This court has not previously determined if such facts present a case of omitted income or of erroneous deduction, and we need not do so here because the outcome under either standard is the same: Appellant knew or had reason to know of the tax understatement.[19]  Under the knowledge-of-the-transaction test applied in omitted income cases, Appellant fails to satisfy

_____

[19]   This court took the same approach in <u>Park</u>.  <u>See</u> <u>Park</u>, 25 F.3d at 1298-99.  Because the result in <u>Park</u> was the same under the knowledge-of-the-transaction test and the new erroneous deduction test set forth in the Ninth Circuit's opinion in <u>Price</u>, this court declined to determine which test applied.  <u>Id.</u>

14

§ 6015(b)(1)(C) because she had actual knowledge of the retirement distributions and of the corresponding earned interest at the time she signed the return.[20]  In erroneous deduction cases, this court asks whether Appellant "knew or had reason to know" that the deduction in question would give rise to a tax understatement at the time she signed the return.  The parties agree that Appellant did not have actual knowledge that the deduction was improper.  However, because Appellant knew all the facts surrounding the transaction that gave rise to the understatement, including the amount of the retirement proceeds, the account where the proceeds were deposited and drawn upon, the amount of interest earned on the proceeds, and the manner in which the proceeds were spent, Appellant had "reason to know" of the improper deduction as a matter of law.  Appellant's defense consists only of her mistaken belief that money spent to pay off a mortgage is properly deductible from retirement distributions. Ignorance of the law cannot establish an innocent spouse defense to tax liability.  Park, 25 F.3d at 1293-94; Sanders, 509 F.2d at 169 & n.14.

Because Appellant "knew or had reason to know" of the understatement under both the omitted income standard and the erroneous deduction standard, she fails to establish the requirement of § 6015(b)(1)(C).  This conclusion bars relief

---

[20]  This is the result reached by the Tax Court.  Cheshire, 115 T.C. at 193.

15

under § 6015(b)(1), obviating the need for this court to decide whether Appellant satisfied the requirement of § 6015(b)(1)(D). The Tax Court's determination that Appellant is not entitled to innocent spouse relief under § 6015(b)(1) is not clearly erroneous.

## VI.  Section 6015(c) Relief

Section 6015(c)(1) allows any divorced (or separated) individual to elect to assume responsibility for only that portion of a joint tax deficiency that is properly allocable to that individual.[21]  The parties agree that Appellant falls within the class of taxpayers permitted to make a § 6015(c) election since she and Mr. Cheshire were divorced when she filed her petition with the Tax Court.  Moreover, neither party in this case disputes that the deficiency attributable to the retirement distributions is properly allocable to Mr. Cheshire.  Thus, if this election is available to Appellant, she can avoid liability for the tax deficiency caused by the retirement distributions. However, the benefit of the § 6015(c) election is not available to an individual with actual knowledge of "any item giving rise to a deficiency."  26 U.S.C. § 6015(c)(3)(C).[22]  In order to

---

[21]    See supra note 5 for complete text of 26 U.S.C. 6015(c)(1).

[22]    See supra note 7 for complete text of 26 U.S.C. 6015(c)(3)(C).

16

preclude relief under § 6015(c), the Commissioner must prove by a preponderance of the evidence that Appellant had actual knowledge of "any item giving rise to a deficiency."  Culver v. Comm'r, 116 T.C. 189, 196 (2001).  Whether the Commissioner satisfied this burden is the § 6015(c) issue in this appeal.

The debate between the parties focuses on the meaning of the term "item" in § 6015(c)(3)(C).  Appellant argues that "item" means "incorrect tax reporting of an item of income, deduction, or credit" so that § 6015(c)(3)(C) only bars relief for spouses with actual knowledge that an entry on the joint tax return is incorrect.  The Commissioner argues that "item" means "an item of income, deduction, or credit" so that § 6015(c)(3)(C) bars relief for all spouses with actual knowledge of the income-producing transaction, even if they lacked knowledge of the incorrect tax reporting of that transaction.

The term "item" appears fifteen times in § 6015.  Most of these appearances are uninformative, but the uses of the term "item" in § 6015(b)(1)(B) and (d)(4) support the Commissioner's definition.  Section 6015(b)(1)(B) refers to "an understatement of tax attributable to erroneous items of one individual filing the joint return."[23]  If "item" refers to the "incorrect tax reporting of an item," as Appellant asserts, then the reference to an "erroneous item" is redundant.  Thus, § 6015(b)(1)(B)

---

[23]    See supra note 4 for the complete text of 26 U.S.C. § 6015(b)(1).

17

suggests that "item" means "an item of income, deduction, or credit," as the Commissioner asserts. Furthermore, § 6015(d)(4) refers to "an <u>item</u> of deduction or credit."[24] This use of the term "item" suggests that the term refers to an actual item of income, deduction, or credit, rather than the incorrect reporting of such an item.

Other sections of the Internal Revenue Code define the term "item" without reference to tax consequences. For example, § 61(a) defines "gross income" to include such "items" as compensation for services, interest, rents, and royalties. 26 U.S.C. § 61(a) (1988 & Supp. 2001). Thus, in this context, "item" means an item of income. Section 6231(a)(3) defines the term "partnership item" as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A . . . ." 26 U.S.C. § 6231(a)(3) (1989 & Supp. 2001). These uses of the term "item," as well as those uses appearing in § 6015, suggest that "item" means "an item of income, deduction, or credit." <u>See</u> <u>Comm'r v. Lundy</u>, 516 U.S. 235, 250 (1996) (stating that "identical words used in different parts of the

---

[24] Section 6015(d)(4) provides:
> If an item of deduction or credit is disallowed in its entirety solely because a separate return is filed, such disallowance shall be disregarded and the item shall be computed as if a joint return had been filed and then allocated between the spouses appropriately. A similar rule shall apply for purposes of section 86.

26 U.S.C. § 6015(d)(4) (Supp. 2001).

18

same act are intended to have the same meaning") (internal citations and quotations omitted).  This interpretation supports the Commissioner's position that § 6015(c)(3)(C) bars relief for all spouses with actual knowledge of the income-producing transaction, even if they lacked knowledge of the incorrect tax reporting of that transaction.

Furthermore, Appellant's claim that § 6015(c)(3)(C) precludes relief only if the spouse has knowledge of incorrect tax reporting runs afoul of the general rule that ignorance of the tax laws is not a defense to a tax deficiency.  See Park, 25 F.3d at 1293-94 (noting that ignorance of the law cannot establish an innocent spouse defense to tax liability).  In Sanders, a case applying the predecessor innocent spouse statute, we noted that the statute "seemingly makes ignorance of the fact that known receipts constitute taxable income a valid justification for not knowing or having reason to know of omissions from gross income."  509 F.2d at 169 n.14.  Rather than establish an ignorance of the law defense, however, in Sanders we decided to apply a statutory interpretation that "is difficult to square with a literal reading of the statutory language" because "the practical problems that have always prevented acceptance of an ignorance of the law defense in the criminal law area . . . arguably apply just as forcefully here."  Id.  Unlike the court in Sanders, we need not overlook the literal meaning of the statute at issue in this case.  As the above discussion

19

illustrates, the plain meaning of § 6015(c)(3)(C) suggests that a spouse with actual knowledge of the income-producing transaction cannot receive innocent spouse relief even if she lacks knowledge of the incorrect tax reporting of that transaction. This reading of the plain meaning of § 6015(c)(3)(C) is compelling in light of the general principle that ignorance of the law is not a defense.

To support the theory that "item" means "incorrect tax reporting of an item," Appellant and amici curiae point to the legislative history of § 6015(c)(3)(C). We decline to defer to this legislative history for two reasons. First, when interpreting a statute, this court "must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). Unless the text of a statute is ambiguous on its face, this court adheres to that statute's plain meaning. Id. As the above analysis demonstrates, the text of § 6015 and other sections of the Internal Revenue Code strongly suggests that "item" refers to "an item of income, deduction, or credit." Section 6015(c)(3)(C) is not facially ambiguous.

Second, the legislative history of § 6015(c)(3)(C) is ambiguous. Some portions of the history appear to support the Commissioner's position. See S. REP. NO. 105-174, at 55-56, 59; H.R. CONF. REP. NO. 105-599, at 253 (1998); 144 CONG. REC. 56, S4473 (1998). Other parts of the history, however, suggest that the § 6015(c)(3)(C) exception is intended to cover spouses with

20

knowledge of the transaction giving rise to the deficiency in addition to spouses with knowledge that the tax return is incorrect.  See H.R. CONF. REP. NO. 105-599, at 253; S. REP. NO. 105-174, at 58.  We decline to allow inconclusive legislative history to affect our interpretation of the plain meaning of § 6015(c)(3)(C).  See Hubbard v. United States, 514 U.S. 695, 708 (1995) (noting that "[c]ourts should not rely on inconclusive statutory history as a basis for refusing to give effect to the plain language of an Act of Congress").  Thus, we conclude that "item" means "an item of income, deduction, or credit," as asserted by the Commissioner.[25]

The Tax Court adopted this definition of "item" and indicated that the knowledge standard under § 6015(c)(3)(C) in an omitted income case is "actual and clear awareness" of an item of income.[26]  Cheshire, 115 T.C. at 195.  Since Cheshire, the Tax

---

[25]    This determination is in line with an unpublished Ninth Circuit opinion holding that the taxpayer's "actual knowledge of items of income that were unreported" precluded relief under § 6015(c) even though the taxpayer had no knowledge that the tax return was incorrect.  Wiksell v. Comm'r, No. 99-70643, 2000 WL 340130, at *2 (9th Cir. Mar. 28, 2000) (unpublished).

[26]    Contrary to Appellant's contention, the Tax Court's interpretation of § 6015(c) does not ignore its remedial nature by improperly substituting the knowledge requirement from § 6015(b)(1)(C) (and former § 6013(e)(1)(C)) for the stricter knowledge requirement of § 6015(c)(3)(C).  The knowledge standard of § 6015(c)(3)(C) requires "actual knowledge."  The Tax Court interpreted this to mean "actual and clear awareness . . . of the existence of an item."  Cheshire, 115 T.C. at 195.  Unlike former § 6013(e)(1)(C) and current § 6015(b)(1)(C), a mere "reason to know" is not enough to preclude tax relief under § 6015(c).

Court has interpreted the knowledge standard in the context of an erroneous deduction to be "actual knowledge of the factual circumstances which made the item unallowable as a deduction." King v. Comm'r, 116 T.C. 198, 204 (2001).  As Appellant is liable under either standard, we need not determine which standard applies in this case.  Appellant had "actual and clear awareness" of Mr. Cheshire's retirement distributions and earned interest.  Thus, she satisfies the § 6015(c)(3)(C) knowledge requirement for omitted income cases.  Furthermore, Appellant was aware of how the retirement distributions were spent.  None of these expenditures qualifies for proper deduction, so Appellant had "actual knowledge of the factual circumstances which made the item unallowable as a deduction."  In such circumstances, Appellant satisfies the § 6015(c)(3)(C) knowledge requirement for erroneous deduction cases.  Thus, § 6015(c)(3)(C) bars relief under either the omitted income or the erroneous deduction knowledge standard, even though Appellant was unaware of the tax consequences of the deduction.  The Tax Court's determination that Appellant is not entitled to innocent spouse relief under § 6015(c) is not clearly erroneous.

## VII.  Section 6015(f) Relief

Section 6015(f) confers power upon the Secretary and his delegate, the Commissioner, to grant equitable relief where a

taxpayer is not entitled to relief under § 6015(b) or (c), but "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)."[27]  In this case, Appellant argues that the Commissioner improperly denied her equitable relief with respect to the retirement distributions and the interest income.[28]  This court reviews the Commissioner's decision to deny equitable relief for abuse of discretion.  See Butler, 114 T.C. at 291-92.[29]

This court has stated that "[t]he most important factor in determining inequity is whether the spouse seeking relief 'significantly benefitted' from the understatement of tax." Reser, 112 F.3d at 1270 (quoting Buchine v. Comm'r, 20 F.3d 173,

---

[27]  See supra note 6 for complete text of 26 U.S.C. 6015(f).

[28]  The Commissioner also denied Appellant equitable relief with respect to the entire § 6662(a) accuracy-related penalty. The Tax Court affirmed the denial of equitable relief with respect to the § 6662(a) penalty associated with the interest income.  Cheshire, 115 T.C. at 198-99.  However, the Tax Court granted equitable relief to Appellant for the portion of the § 6662(a) penalty that relates to the retirement distributions. Id.  Neither party appeals these findings.

[29]  Because the wording of § 6015(f)(1) is virtually identical to that of former § 6013(e)(1)(D), case law construing former § 6013(e)(1)(D) is helpful in determining whether the Commissioner abused his discretion in denying equitable relief to Appellant under current § 6015(f)(1).  See Butler, 114 T.C. at 291 (applying the § 6013(e)(1)(D) standard to a § 6015(f) inquiry because "the language of section 6015(f)(1) does not differ significantly from the language of former section 6013(e)(1)(D)").

181 (5th Cir. 1994)).  This benefit can be indirect, such as "a spouse's receipt of more than she otherwise would as part of a divorce settlement."  Reser, 112 F.3d at 1270.  In the instant case, Appellant received as part of the divorce settlement the Cheshires' marital residence, the value of which was enhanced by the use of $99,425 in untaxed retirement distributions to pay off the mortgage.  Appellant also received the family car, which was purchased with retirement distributions.  The Commissioner could have reasonably concluded upon these facts that Appellant received significant benefit from the tax understatement.  Thus, the Commissioner's decision to deny equitable relief to Appellant is sufficiently supported and not an abuse of discretion. Accordingly, the Tax Court correctly determined that the Commissioner did not abuse his discretion when he denied equitable relief to Appellant under § 6015(f) with respect to the retirement distributions and the interest income.

## VIII.  CONCLUSION

For all the foregoing reasons, we AFFIRM the judgment of the Tax Court.

24