T.C. Summary Opinion 2003-72

UNITED STATES TAX COURT

BARBARA A. ROOKS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11874-02S.                    Filed June 11, 2003.

Barbara A. Rooks, pro se.

<u>James A. Kutten</u>, for respondent.

DINAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code as
amended.

This case is before the Court on petitioner's petition to review respondent's denial of relief under section 6015 with respect to petitioner's 1992 and 1993 taxable years.

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioner resided in St. Louis County, Missouri, on the date the petition was filed in this case.

In November 1994, petitioner and her now deceased husband, Thomas Rooks, filed joint Federal income tax returns for taxable years 1989 through 1993 on Forms 1040, U.S. Individual Income Tax Return.[1] After applying various payments and credits to the years 1989 through 1991, all liabilities with respect thereto have been satisfied. The remaining returns, those for 1992 and 1993, reflected outstanding tax liabilities of $4,872 and $5,294, respectively. No payment was made with respect to these amounts at the time the returns were filed.

Mr. Rooks died on August 30, 1996. In November 1996, petitioner submitted amended returns for each of 1992 and 1993 on Forms 1040X, Amended U.S. Individual Income Tax Return. Respondent accepted the changes made by these amended returns,

---

[1]Respondent previously had prepared substitute returns for petitioner and Mr. Rooks for 1989 through 1992. However, petitioner's and Mr. Rook's account was adjusted to reflect the liabilities shown on the filed returns after they were received by the Internal Revenue Service.

resulting in a reduction of taxes due. After application of various penalties, credits, and interest, respondent's records indicated outstanding liabilities on September 30, 2002, of $12,298 for 1992 and $9,473 for 1993.

Petitioner's request for section 6015(f) relief was made with respect to the unpaid tax liabilities for taxable years 1992 and 1993. In respondent's notice of determination denying petitioner relief, respondent stated in relevant part:

> With Tax Underpayment cases, the Burden of Proof is on the Requesting Spouse (Barbara Rooks) to show that it is Inequitable to hold her jointly liable for the unpaid tax liabilities. One of the strongest factors that must be considered is whether the Requesting Spouse reasonably believed that the Non Requesting Spouse (Thomas Rooks) could and would pay the Tax Underpayments. In this case, Barbara Rooks has not shown that she reasonably believed (on November 1, 1994) that Thomas Rooks would and could pay the 1992 and/or 1993 Tax Underpayments.
>
> Barbara Rooks states that she signed blank tax returns for 1992 and 1993 tax years in April 1993 and April 1994, respectively. Accordingly, she states that she was unaware of the Tax Underpayments. She may indeed have signed those tax returns, however, since they were not filed, she did not become jointly liable for such returns.
>
> Barbara Rooks signed the 1992 and 1993 joint tax returns that were filed on November 1, 1994 (along with the 1989, 1990, and 1991 tax returns). She does not indicate that she signed those returns in the blank format. In fact, she states that she signed "Amended" returns. (The 1989, 1990, and 1991 returns filed in November 1994 did amend the tax accounts for those years.) These returns therefore caused her to be jointly liable for the 1992 and 1993 Tax Underpayments. It is at this point in time that we must analyze whether she reasonably believed that the 1992 and/or 1993 Tax Underpayments could or would be paid by Thomas Rooks.

Given the fact that they filed the 1989, 1990, 1991, 1992, and 1993 returns simultaneously, with a cumulative Tax Underpayment of $25,919, plus penalties and interest; the fact that they did not have more than $6,000; and the fact that she acknowledges that he would have had a great deal of trouble paying the tax liabilities, it is not reasonable that she thought (in November 1994) that Thomas could pay the 1992 or 1993 tax liabilities.

(If she did sign those returns in blank format, Innocent Spouse Relief cannot be automatically granted as she chose to shield herself from the situation. More importantly, we would still focus on whether she would have thought in November 1994 that Thomas Rooks could have been able to pay the Tax Underpayments.)

In addition to showing that she reasonably believed that Thomas Rooks could and would pay the Tax Underpayments, Barbara Rooks did not establish that she would suffer an Economic Hardship [if she] is held liable for the Tax Underpayments.

Petitioner challenges respondent's denial of section 6015 relief.

Spouses who file a joint Federal income tax return generally are jointly and severally liable for the payment of the tax shown on the return or found to be owing. Sec. 6013(d)(3); Cheshire v. Commissioner, 115 T.C. 183, 188 (2000), affd. 282 F.3d 326 (5th Cir. 2002). However, relief from joint and several liability is available to certain taxpayers under section 6015. There are three avenues for relief under this section--section 6015(b), (c), and (f). Petitioner requested relief under each of these provisions.

Section 6015(b) applies only to "an understatement of tax attributable to erroneous items of 1 individual filing the joint return". Sec. 6015(b)(1)(B). Section 6015(c) applies only with

respect to liability for deficiencies. Sec. 6015(c)(1). In general terms, and for purposes of this case, both an "understatement" and a "deficiency" are equal to the amount of tax required to be shown on a return less the amount of tax actually shown on the return. Secs. 6015(b)(3), 6662(d)(2)(A), 6211(a). The unpaid tax liabilities in this case result from amounts shown as due on the returns filed by petitioner and Mr. Rooks. These underpayments have been assessed by respondent. Because respondent does not assert that the amounts of tax shown on petitioner's returns as filed (and as reduced by the amended returns) were less than the amounts required to be shown thereon, there is neither an understatement nor a deficiency in this case, making section 6015(b) and (c) inapplicable.

The remaining avenue for relief under section 6015 is the equitable relief which may be afforded by section 6015(f). This relief is available to taxpayers who are not otherwise entitled to section 6015 relief if, taking into account all the facts and circumstances, it is inequitable to hold the taxpayer liable for any unpaid tax or deficiency (or portion thereof). Sec. 6015(f)(1) and (2). Section 6015(f) relief is available to petitioner--because that provision applies to any unpaid tax liability--and this Court may review respondent's denial of such relief. Ewing v. Commissioner, 118 T.C. 494 (2002).

Equitable relief under section 6015(f) is discretionary, and

we review the Commissioner's denial of such relief for an abuse of his discretion. Cheshire v. Commissioner, supra at 198. The Commissioner's exercise of discretion is entitled to due deference; in order to prevail, the taxpayer must demonstrate that in not granting relief, the Commissioner exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Mailman v. Commissioner, 91 T.C. 1079, 1082-1084 (1988).[2]

As directed by section 6015(f), the Commissioner has prescribed procedures in Rev. Proc. 2000-15, 2000-1 C.B. 447, that the Commissioner will use in determining whether an individual qualifies for relief under that section. Rev. Proc. 2000-15, sec. 4.02, 2001-1 C.B. at 448, lists several conditions which if met ordinarily will entail the granting of relief from unpaid liabilities reported on a joint return. As applicable here, these conditions are:

> (a) At the time relief is requested, the requesting spouse is no longer married to * * * the nonrequesting spouse * * * ;

> (b) At the time the return was signed, the requesting spouse had no knowledge or reason to know that the tax would not be paid. The requesting spouse must establish that it was reasonable for the

---

[2]Respondent argues that, because the standard of review in this case is one of abuse of discretion, "the record in this case is limited to the administrative record, and the Court should not allow any testimony." Because of our holding in this case, however, we need not address this argument further. See, e.g., Mellen v. Commissioner, T.C. Memo. 2002-280.

requesting spouse to believe that the nonrequesting spouse would pay the reported liability * * *; and

(c) The requesting spouse will suffer economic hardship if relief is not granted * * * .

If relief is not available pursuant to section 4.02, the Commissioner may nevertheless grant relief pursuant to the general provisions of Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448. That section lists several nonexclusive factors to be considered in determining eligibility for relief. Several of the factors are repetitive of the above three factors; whether a requesting spouse knew or had reason to know that the nonrequesting spouse would not pay the liability is considered to be "an extremely strong factor". Other factors to be considered include the presence of abuse, the existence of a legal obligation by either spouse to pay the liability, to whom the liability is attributable, the receipt of a significant benefit from the unpaid liability, and whether the requesting spouse has made a good faith effort to comply with Federal income tax laws.

In denying petitioner section 6015(f) relief, respondent primarily relied on his determination that (a) it would not have been reasonable for petitioner to have believed that Mr. Rooks would pay the reported liabilities, and (b) petitioner would not suffer economic hardship if relief were not granted. Petitioner argues that she nevertheless should not be responsible for payment of the liabilities at issue. She asserts that Mr. Rooks

"is the one who failed to properly file the tax returns in question" and that "the taxes owed are my ex-spouse's and not mine."

The circumstances surrounding the filing of the tax returns for 1989 through 1993 by petitioner and Mr. Rooks are unclear. Prior to trial, petitioner asserted that she signed blank tax returns for each of the years 1989 through 1993 prior to the time when each individual return was due in the corresponding month of April. She claimed that she signed blank returns because "the tax deadline was so close". She further maintained that the returns which were filed in November 1994 were amended returns meant to correct errors on the original returns. Petitioner specifically asserted that these amended returns were made on Forms 1040X. However, it is clear from the record that the returns filed in November 1994 were on Forms 1040. Petitioner stated at trial that the returns she signed in each April must not have been filed, but she did not explain why the November 1994 returns also would have been filed on Forms 1040. She further testified that the forms she signed in November 1994 were blank, stating that "there were extenuating circumstances about" the returns. Petitioner, however, did not offer any testimony specifically addressing what the circumstances were in November 1994 which caused her to sign blank returns, since no deadlines were approaching at that time. Finally, petitioner's various

assertions that Mr. Rooks was committing "fraud" in connection with the returns are unfounded based upon the record before this Court. Although the returns were delinquent, they actually overstated the income tax liabilities of petitioner and Mr. Rooks: The amended returns filed after Mr. Rooks's death reduced the liabilities owed by petitioner and Mr. Rooks. However, the amended returns did incorrectly reflect the amounts shown as due on the original returns as amounts which had been paid with those returns. Petitioner's testimony at trial reinforces this error-- she testified that the amended returns showed that she "had no tax owed", and that these returns resulted in refunds due to her. In fact, the "refunds" were shown on the amended returns as such only because of the above-mentioned error.

Based on petitioner's unclear assertions and testimony concerning the tax returns at issue, we find that petitioner essentially turned a "blind eye" toward the filing of the Federal income tax returns and the failure to pay the taxes shown on them for the years in issue. A taxpayer who signs a return without reviewing it, or who signs a blank return, is charged with constructive knowledge of the tax due shown on that return. Castle v. Commissioner, T.C. Memo. 2002-142. Thus, even if petitioner did sign blank returns, she should have known of the liabilities shown thereon.

Petitioner argues that she received no benefit from her

husband's retirement income, which income she asserts is a primary reason for the underpayments. She also argues that she was unaware of Mr. Rooks's noncompliance with Federal tax law, before and during the years at issue, because he had actively deceived her during that time concerning taxes and other financial matters. Finally, petitioner argues that she was subjected to mental abuse by Mr. Rooks, and petitioner points to medical problems suffered by petitioner, Mr. Rooks, and petitioner's father. Petitioner did not corroborate her cursory testimony concerning these assertions: She failed to show that she did not benefit from the retirement income, she failed to show a pattern of deception, she failed to provide examples of mental abuse, and she failed to show that any medical condition somehow affected her in a manner relevant to the payment of the income tax liabilities.

Petitioner admits that she signed the returns that were filed in November 1994. These returns are the basis for the joint and several liability for the 1992 and 1993 taxable years. Petitioner signed these returns which showed balances due, along with the returns for 1989 through 1991, months or years after they were required to be filed. We agree with respondent that the central issue in this case centers around the lack of payment of the liabilities shown on these clearly delinquent returns. Petitioner has not provided this Court with credible evidence to

call into doubt respondent's determination that she could not have reasonably believed that Mr. Rooks would pay the relevant tax liabilities at the time she signed these returns.  Nor is there any indication that petitioner would suffer economic hardship if relief is not granted.  Based on the record before this Court, we do not find respondent's denial of section 6015 relief to be arbitrary, capricious, or without sound basis in fact or law.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.