T.C. Memo. 2007-127

UNITED STATES TAX COURT

JANET MARIE WILSON, Petitioner, AND KENNETH E. WILSON, Intervenor
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7509-05.                    Filed May 21, 2007.

Steven T. Barta, for petitioner.

Kenneth E. Wilson, pro se.

David Lau, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, Judge:  Respondent determined deficiencies in petitioner and intervenor's joint Federal income tax and

accuracy-related penalties under section 6662(a) as follows:[1]

| Year | Deficiency | Sec. 6662(a) Penalty |
|------|-----------|---------------------|
| 2001 | $22,178 | $4,436 |
| 2002 | 8,669 | 1,734 |

The sole issue for decision is whether petitioner is entitled to relief from joint and several liability under section 6015(c) for 2001 and 2002 (the years in issue).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time she filed her petition, petitioner resided in Hawaii. At the time he filed his notice of intervention, intervenor resided in Nevada.

Petitioner and intervenor were married on or about February 4, 1984. They legally separated in February 2003, and on September 23, 2004, the Superior Court of Arizona, Maricopa County, officially dissolved their marriage.

Throughout their marriage, intervenor physically and verbally abused petitioner and petitioner's son. During the years in issue, the abuse included threats against petitioner's

---

[1] All section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. All amounts are rounded to the nearest dollar.

and petitioner's son's lives, physical assaults, and manipulative and controlling behavior.

During the years in issue, petitioner and intervenor participated in Sign Sellers and Rocky Creations (the businesses), which sold engraved stones and other items. Petitioner designed the artwork that was etched onto the stones, while intervenor maintained the business records and handled all of the money. Occasionally, petitioner's son worked for the businesses and was paid on an hourly basis.

Petitioner and intervenor maintained at least five checking accounts at various times during the years in issue, all of which were used in the operation of the businesses. Intervenor had signatory authority over four of the five checking accounts. The fifth checking account (the Bank One account) was opened by petitioner and petitioner's son, and only they had signatory authority. Intervenor instructed petitioner and petitioner's son to open the Bank One account. While intervenor did not have signatory authority over the Bank One account, he exercised complete control over the account. Intervenor instructed petitioner what to deposit into the account and when. When intervenor needed money, he instructed petitioner to sign a blank check, and he filled in the rest.

With the aid of a tax return preparer, intervenor prepared and filed joint Federal income tax returns for the years in

issue.  On the returns, intervenor indicated he was self-employed and petitioner was a "homemaker".  On attached Schedules C, Profit or Loss From Business, intervenor listed himself as the sole proprietor of an engraving business, which he identified as "Rocky Creations" on the 2002 Schedule C.  On the Schedules C, intervenor reported net profits from the business activity of $255 and $6,953 for 2001 and 2002, respectively.  Intervenor reported total taxes of $538 and $982, respectively.  Petitioner did not participate in the making or filing of the returns, nor did she review them prior to filing.  Intervenor signed both his and petitioner's names on the returns.  However, petitioner would have signed the returns if intervenor had shown them to her and asked her to sign.

On February 24, 2005, respondent issued petitioner and intervenor a notice of deficiency.  Respondent disallowed certain claimed Schedule C expenses, increased Schedule C gross receipts based on bank deposits and cash expenditures, and increased self-employment tax.  Respondent determined deficiencies in petitioner and intervenor's Federal income tax of $22,178 and $8,669 for 2001 and 2002, respectively.  Respondent also determined petitioner and intervenor were liable for accuracy-related penalties under section 6662(a) of $4,436 and $1,734, respectively.

In response to the notice of deficiency, petitioner filed a petition with this Court on April 22, 2005.  Also on April 22, 2005, petitioner submitted to respondent a Form 8857, Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief), and a Form 12510, Questionnaire for Requesting Spouse.

On July 12, 2005, intervenor filed a notice of intervention and objected to petitioner's being relieved of liability under section 6015.[2]

OPINION

Petitioner does not dispute the deficiencies and penalties determined by respondent for the years in issue.  Instead, she seeks relief from joint and several liability under section 6015(c).  Respondent agrees that petitioner is entitled to relief from the entire joint tax liability under section 6015(c).[3]  However, as previously mentioned, intervenor objects to petitioner's being relieved of liability under section 6015.

---

[2]  On March 17, 2005, intervenor filed a separate petition in response to the notice of deficiency.  See Wilson v. Commissioner, docket No. 5184-05S.  In his petition, intervenor sought a redetermination of the deficiencies determined by respondent and requested relief from liability under sec. 6015.

[3]  Petitioner also argues, and respondent agrees, that if she is not entitled to relief under sec. 6015(c), then she is entitled to relief under sec. 66(c).  Because we find petitioner is entitled to relief under sec. 6015(c), we do not address petitioner's alternative claim under sec. 66(c).

Section 6015(e)(4) grants the nonelecting spouse (intervenor) some participatory entitlement in an action to determine the electing spouse's (petitioner's) right to relief from joint and several liability pursuant to section 6015. Rule 325; Corson v. Commissioner, 114 T.C. 354, 364-365 (2000). By exercising that right, intervenor became a party to this case.[4] Tipton v. Commissioner, 127 T.C. 214, 217 (2006). Therefore, in light of intervenor's opposition to petitioner's being granted relief, we shall proceed to examine the requirements of section 6015(c) to decide whether petitioner is entitled to relief under this subsection.

As a prerequisite to relief under section 6015(c), the requesting spouse must be legally separated or no longer married to the nonrequesting spouse at the time the request for relief is made. Sec. 6015(c)(3)(A)(i)(I). The request for relief under section 6015(c) may be made at any time after a deficiency for such year is asserted, but no later than 2 years after the date on which the Commissioner has begun collection activities with respect to the requesting spouse. Sec. 6015(c)(3)(B). Petitioner and intervenor were divorced on September 23, 2004,

---

[4] However, as the intervening party, intervenor may not enlarge the issues or alter the nature of this proceeding. See Tipton v. Commissioner, 127 T.C. 213, 217 (2006). This proceeding concerns only whether petitioner is entitled to relief from joint and several liability. We do not consider arguments raised by intervenor regarding the underlying liability or his entitlement to innocent spouse relief.

and petitioner submitted the Form 8857 shortly after her receipt of the notice of deficiency. Therefore, petitioner is eligible to request relief under section 6015(c).

In general, section 6015(c) allows proportionate relief from joint and several liability by relieving the requesting spouse from liability for items giving rise to a deficiency that would have been allocable to the nonrequesting spouse had they filed separate returns. See sec. 6015(c)(1); see also sec. 6015(d)(3)(A). Thus, we must determine whether the items giving rise to the deficiencies in this case are allocable to petitioner or intervenor.

The items giving rise to the deficiencies, including the unreported gross receipts, related to the operation of the businesses. Section 1.6015-3(d)(2)(iii), Income Tax Regs., provides that omitted items of business income are allocated to the spouse who owned the business. Petitioner and respondent agree that all items giving rise to the deficiencies are allocable to intervenor because intervenor was the true owner of the businesses. Intervenor argues that the unreported gross receipts are allocable to petitioner.[5]

---

[5] Other items giving rise to the deficiencies include the disallowed Schedule C expenses and the self-employment taxes. Intervenor does not address these items on brief. We assume that, since intervenor listed himself as the sole proprietor on the Schedules C on which the expense deductions were claimed and because he identified himself as "self-employed" while he
(continued...)

While the record is unclear on this point, intervenor alleges that respondent determined the unreported gross receipts by analyzing deposits made into the Bank One account. Intervenor alleges that the Bank One account was petitioner's "secret bank account" and that, because only petitioner and petitioner's son had signatory authority over the account, he "did not know and did not have reason to known [sic] of the unreported income of her secret bank account." Intervenor's allegations are against the manifest weight of the evidence.[6]

Although petitioner provided services for the businesses and opened the Bank One account in her and her son's name, it is clear that intervenor maintained control of the businesses and the Bank One account at all times. Intervenor was extremely abusive and demanded to have absolute authority over all financial aspects of the marriage and the businesses. He did not allow petitioner to review business records, nor did he allow her to review the tax returns for the years in issue. This pattern

[5](...continued)
identified petitioner as "homemaker", intervenor concedes that any deficiencies arising from the disallowed Schedule C expenses and the increased self-employment taxes are allocable to him.

[6] It is worth noting that, while intervenor appeared at trial, he did not testify, nor did he offer any evidence outside of the stipulation of facts. Instead, in his opening brief, which he titled "Intervenor's Brief and Affidavit", intervenor attempted to testify. Pursuant to Rule 143(b), statements in briefs do not constitute evidence, and we give such statements made by intervenor no consideration.

also held true with respect to the Bank One account. Even though the account was opened in petitioner's name and she, not intervenor, had signatory authority, intervenor exercised complete control over the account. He told petitioner what to deposit into that account and when. He instructed petitioner to sign blank checks, which he later filled in. Because of the severity of the abuse, petitioner was under intervenor's absolute control, such that petitioner believed that if she disobeyed intervenor's instructions, her and her son's lives would be in jeopardy.

We find that, on the basis of intervenor's control over petitioner and all aspects of the businesses, he was the true owner of the businesses. Our finding is consistent with the Schedules C prepared by intervenor, on which he listed himself as the sole proprietor of an unnamed engraving business in 2001 and as the sole proprietor of Rocky Creations in 2002. Thus, all items relating to the operation of the businesses, including the understatement of gross receipts, are allocable to intervenor. See sec. 1.6015-3(d)(2)(iii) and (iv), Income Tax Regs.

Even if the requesting spouse otherwise qualifies for relief under section 6015(c), relief is not available if the Commissioner demonstrates that the requesting spouse had actual knowledge, at the time the return was signed, of any item giving rise to a deficiency (or portion thereof). Sec. 6015(c)(3)(C);

King v. Commissioner, 116 T.C. 198, 203 (2001).  The "knowledge standard" for purposes of section 6015(c)(3)(C) "'is an actual and clear awareness (as opposed to reason to know) of the existence of an item which gives rise to the deficiency (or portion thereof).'"  King v. Commissioner, supra at 203 (quoting Cheshire v. Commissioner, 115 T.C. 183, 195 (2000), affd. 282 F.3d 326 (5th Cir. 2002)).  "'In the case of omitted income * * *, the electing spouse must have an actual and clear awareness of the omitted income.'"  Id.  Respondent concedes that he cannot demonstrate petitioner had actual knowledge of the items giving rise to the deficiencies.  However, if intervenor offers sufficient evidence that petitioner had "actual knowledge" of the omitted gross receipts, then petitioner should not be entitled to relief under section 6015(c).

Intervenor alleges that petitioner had actual knowledge of the omitted gross receipts because she controlled the Bank One account.  As discussed above, intervenor controlled the Bank One account, not petitioner.  Additionally, intervenor controlled all of the business records, prepared the tax returns for the years at issue, did not allow petitioner to review the tax returns, and forged petitioner's signature on the tax returns.  We find that petitioner had no actual knowledge of the omitted gross

receipts.[7]  Accordingly, we hold that petitioner is entitled to relief from joint and several liability under section 6015(c) for the years in issue.

In reaching our holding herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be

entered for petitioner.

---

[7]  Even if petitioner had actual knowledge, the regulations would excuse her from disqualification based on actual knowledge because of the abuse present in her relationship with intervenor. See sec. 1.6015-3(c)(2)(v), Income Tax Regs.