T.C. Memo. 2004-52

UNITED STATES TAX COURT

ARLENE C. OGONOSKI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4759-02.                    Filed March 8, 2004.

Arlene C. Ogonoski, pro se.

<u>John Aletta</u>, for respondent.

MEMORANDUM OPINION

BEGHE, <u>Judge</u>:  Respondent denied petitioner's claim for
relief under section 6015(f)[1] from her unpaid Federal income tax
liabilities for taxable years 1989 through 1999.  In a timely
petition and amended petition, petitioner requested this Court to

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

review respondent's determination for the 1989 through 1997 tax years. Petitioner also requested this Court to review whether the period of limitation for collection of her unpaid tax liability for 1989 has expired.

We sustain respondent's determination that petitioner is not entitled to relief under section 6015(f). We lack jurisdiction to review the limitation issue.

Background

Some of the facts have been stipulated and are so found. Petitioner lived in Burlington, Connecticut, when she filed her petition in this case. From 1989 to the present, petitioner has been married to Arthur Ogonoski (Mr. Ogonoski) and lived with him in the same household. Since 1994, petitioner and Mr. Ogonoski have lived in a house they own, at 348 George Washington Turnpike in Burlington, that they purchased for $71,000. The house is subject to a mortgage loan (from an individual rather than a lending institution) that appears to bear an above-market rate of interest.

From 1989 to April 1994 petitioner was employed part time as an office temp; since April 1994 petitioner has been employed as a secretary/clerk. At all times relevant, Mr. Ogonoski has worked as a self-employed excavator.

Petitioner and Mr. Ogonoski have five children; they reported all five children as dependents on their 1989 through 1994 tax returns, four children as dependents on their 1995

return, three children as dependents on their 1996 through 1998 returns, and two children as dependents on their 1999 return.

For taxable years 1989 through 1999, petitioner and Mr. Ogonoski filed and executed joint income tax returns. With the exception of the 1998 return, these returns were timely filed. The 1998 return was filed on August 4, 2000.

The handwriting on the returns confirms that petitioner prepared the returns, including the Schedule C, Profit or Loss From Business, for Mr. Ogonoski's excavation business. For each of the years in question, Mr. Ogonoski's business had net income, which generated self-employment tax liability and contributed to the taxable income shown on the returns.

Throughout the marriage, Mr. Ogonoski has kept his business and financial transactions private from petitioner; he provided petitioner little or no information about or control over his finances. Petitioner's only involvement with Mr. Ogonoski's business was to maintain a ledger and prepare their income tax returns. Even though petitioner stated she had no control over Mr. Ogonoski's business and "couldn't get him to wear a seat belt, let alone pay his taxes", she described Mr. Ogonoski as a "wonderful man". There is no record evidence Mr. Ogonoski physically or mentally abused petitioner other than having created a continuing climate of uncertainty about whether and when he would make contributions or payments in respect of the Federal income tax liabilities shown on the joint returns.

All the above-mentioned income tax returns reflected balances due. Neither petitioner nor Mr. Ogonoski paid the balances due when they filed their returns for the taxable years 1989 through 1999. A substantial portion of the unpaid balances is attributable to Social Security self-employment tax on Mr. Ogonoski's excavation business. There is no record evidence Mr. Ogonoski promised petitioner he would pay the tax liabilities reported on their returns. Some payments were subsequently made in respect of the amounts shown due on these returns. Respondent accepted as filed all the returns for the years in issue.

The balances due, petitioner's wages, and income tax and Medicare and Social Security payments withheld from petitioner's wages, reflected on petitioner's and Mr. Ogonoski's joint income tax returns, were as follows:

| Year | Balance Due | Petitioner's Wages | Income Tax Withheld | Medicare/Social Security Tax Withheld |
|------|------------|---------------------|---------------------|---------------------------------------|
| 1989 | $8,943.18 | $5,115.25 | $67.87 | $384.17 |
| 1990 | 7,696.89 | 4,966.80 | -0- | 379,96 |
| 1991 | 2,995.76 | 5,319.00 | -0- | 406.90 |
| 1992 | 5,474.30 | 3,355.96 | 32.75 | 256.76 |
| 1993 | 4,333.32 | 8,233.46 | 954.26 | 629.84 |
| 1994 | 2,242.57 | 14,104.65 | 1,151.04 | 1,079.05 |
| 1995 | 2,211.52 | 22,031.54 | 2,696.67 | 1,685.33 |
| 1996 | 3,023.28 | 25,302.31 | 3,476.39 | 1,935.49 |
| 1997 | 2,621.75 | 29,547.44 | 4,330.30 | 2,264.44 |
| 1998 | 3,647.39 | 33,519.15 | 5,336.74 | 2,598.56 |
| 1999 | 1,831.50 | 36,015.24 | 6,137.84 | 2,801.81 |

On the following dates, respondent assessed income tax, estimated tax and failure-to-pay penalties, and interest against petitioner and Mr. Ogonoski for the taxable years 1989 through

1999 in the amounts set forth below as to which respondent denied petitioner's prayer for relief under section 6015:

| Year | Assessment Date | Assessments |
|------|-----------------|-------------|
| 1989 | 5/28/90 | $20,197.34 |
| 1990 | 6/3/91 | 23,431.75 |
| 1991 | 6/1/92 | 7,697.66 |
| 1992 | 5/31/93 | 12,829.84 |
| 1993 | 5/30/94 | 9,502.73 |
| 1994 | 5/29/95 | 4,630.19 |
| 1995 | 6/10/96 | 3,662.62 |
| 1996 | 6/2/97 | 3,865.19 |
| 1997 | 5/25/98 | 8,327.69 |
| 1998 | 10/30/00 | 2,047.29 |
| 1999 | 6/5/00 | -0- |

Since at least 1997 through the present, petitioner and Mr. Ogonoski have had a joint checking account and used the funds in this account to pay some of their personal expenses. Mr. Ogonoski had other checking accounts related to his business that petitioner did not control or have access to.

On August 7, 1992, petitioner and Mr. Ogonoski filed for chapter 13 bankruptcy in the U.S. Bankruptcy Court in Hartford, Connecticut. On January 15, 1993, the Bankruptcy Court dismissed the case. On April 16, 1993, petitioner and Mr. Ogonoski filed for chapter 7 bankruptcy in the U.S. Bankruptcy Court in Hartford, Connecticut. On July 14, 1993, the Bankruptcy Court dismissed the case.

In 1994, petitioner's house was foreclosed on and sold to pay her and Mr. Ogonoski's debts. For 4 months the Ogonoskis lived in the family car before they rented and then purchased the other house in which they now live.

On November 1, 2000, petitioner filed Form 8857, Request for Innocent Spouse Relief, with respondent regarding taxable years 1972 through 2000. On this form, petitioner requested relief under section 6015(b) and (f), claiming that she had an "understatement of tax" and "underpayment of tax", respectively.

On November 1, 2000, when petitioner filed her request for relief under section 6015, there were no outstanding tax liabilities due from petitioner for taxable years 1972 through 1988. Petitioner stated that Mr. Ogonoski had paid, apparently out of his own separate funds, all of the outstanding taxes, interest, and penalties for taxable years 1972 through 1988.

When petitioner filed her request for relief under section 6015 with respondent, there were outstanding tax liabilities resulting from balances due on her and Mr. Ogonoski's joint returns for taxable years 1989 through 1999. In her request for relief, petitioner acknowledged: "I have been told if I file separately I would not be in this predicament. However I believe if you are married you file jointly".

In workpapers dated May 22, 2001, respondent's examiner proposed to deny petitioner relief under section 6015(b) and (f) for all of petitioner's outstanding tax years.

On June 25, 2001, petitioner filed a Form 12509, Statement of Disagreement, in which she appealed the examiner's proposed determination with respondent's Appeals Office and requested relief under section 6015 for her 1989 through 1997 tax years.

By notice of determination dated January 9, 2002, respondent denied petitioner relief from joint and several liability under section 6015(f) for taxable years 1989 through 1999. Although section 6015(b) is not discussed in the notice of determination, respondent's Appeals Office also denied petitioner relief under section 6015(b) because petitioner's liabilities did not result from an understatement of tax.

On February 21, 2002, petitioner filed her original petition for relief from joint and several liability. On March 28, 2002, petitioner filed her amended petition. Petitioner's prayer for relief does not specify the taxable years for which relief is requested or the Internal Revenue Code provisions under which relief is requested. It concludes: "I pray that I am found to be not responsible for prior taxes my husband owes." Petitioner's brief says she seeks relief under section 6015(f) for her 1989 through 1997 tax years. In her petition, petitioner says: "I always believed that my husband would pay his taxes. In 1989, he paid over $30,000 in taxes, his entire tax plus all penalties & late charges." In her brief, petitioner says: "it is reasonable for her to believe that at sometime her spouse would pay the taxes. The same pattern had existed in the past and the spouse had paid the taxes." Petitioner says she believes the tax liabilities for 1998 through 2001 have been paid.

On May 14, 2002, respondent filed an answer; on June 10, 2002, the Court filed respondent's certification under interim

Rule 325, as amplified by <u>King v. Commissioner</u>, 115 T.C. 118 (2000), that respondent had notified Mr. Ogonoski that petitioner had filed a claim for relief from joint and several liability in this case. Mr. Ogonoski has not intervened in this case.

<u>Discussion</u>

<u>Issue 1. Relief Under Section 6015</u>

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse generally is fully responsible for the accuracy of the return and jointly and severally liable for the entire tax due for that year. Sec. 6013(d)(3); <u>Butler v. Commissioner</u>, 114 T.C. 276, 282 (2000).

Petitioner requested relief under section 6015 from liability for the taxes reported on her 1989 through 1997 joint returns that were not paid when the returns were filed. Respondent determined petitioner was not entitled to the requested relief. In requesting relief, petitioner argues that when she signed the returns, it was reasonable for her to believe Mr. Ogonoski would pay the reported tax liabilities at some future time because there was a similar pattern of nonpayment for prior years, followed by his payment of the balances due for those years. Petitioner also argues she will suffer economic hardship if relief is not granted.

If a taxpayer's request for relief under section 6015 is denied, the taxpayer may petition this Court under section

6015(e)(1) for a review of the Commissioner's determination.  Our jurisdiction in cases brought under section 6015(e)(1) encompasses a review of the Commissioner's determination with respect to all relief afforded by section 6015.  Ewing v. Commissioner, 118 T.C. 494, 497-507 (2002); Fernandez v. Commissioner, 114 T.C. 324, 330-331 (2000); Butler v. Commissioner, supra at 289-290.  This type of case is referred to as a "stand-alone" case, in that petitioner's request for relief is independent of any deficiency proceeding.  Ewing v. Commissioner, supra at 497 (quoting Fernandez v. Commissioner, supra at 329).

In this case, petitioner seeks equitable relief under section 6015(f).  To prevail, petitioner must prove that respondent's denial of equitable relief from joint liability under section 6015(f) was an abuse of discretion.  See Rule 142(a); Washington v. Commissioner, 120 T.C. 137, 146 (2003); Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003); Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002); Demirjian v. Commissioner, T.C. Memo. 2004-22.[2]  The Commissioner's exercise of discretion is entitled to due deference; in order to prevail, the taxpayer must demonstrate that, in not granting relief, the Commissioner exercised his discretion arbitrarily, capriciously,

---

[2]Petitioner has not alleged sec. 7491 applies.

- 10 -

or without sound basis in fact or law. <u>Jonson v. Commissioner</u>, <u>supra</u> at 125; <u>Butler v. Commissioner</u>, <u>supra</u> at 292. We are not limited to the matters contained in the Commissioner's administrative record when deciding this question. <u>Ewing v. Commissioner</u>, 122 T.C. ___, ___ (2004) (slip op. at 6-21).

Section 6015 provides three ways taxpayers may obtain relief from joint and several tax liability. First, section 6015(b) provides full or apportioned relief for "an understatement of tax".[3] Sec. 6015(b)(1)(B) and (2). Because petitioner's liabilities resulted from underpayments of tax shown due on petitioner's returns, not understatements of tax, petitioner does not qualify for relief under section 6015(b). See <u>Washington v. Commissioner</u>, <u>supra</u> at 146.

Second, petitioner does not qualify for relief under section 6015(c) because there are no deficiencies for petitioner's tax years at issue and petitioner and Mr. Ogonoski continue to be married and live together. See sec. 6015(c); <u>Washington v. Commissioner</u>, <u>supra</u> at 147.

Section 6015(f), under which petitioner claims relief, authorizes the Commissioner to grant equitable relief where: (1) The taxpayer is not entitled to relief under section 6015(b) or (c), and (2) "taking into account all the facts and

---

[3]An understatement is the "excess of (i) the amount of the tax required to be shown on the return for the taxable year, over (ii) the amount of the tax imposed which is shown on the return". Secs. 6015(b)(3), 6662(d)(2)(A).

circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion thereof)". See Ewing v. Commissioner, 118 T.C. at 500; see also Fernandez v. Commissioner, supra at 330; Foor v. Commissioner, T.C. Memo. 2004-54.

As directed by section 6015(f), the Commissioner has prescribed procedures to use in determining whether a requesting spouse qualifies for relief under subsection (f).  When respondent issued his notice of determination to petitioner, those procedures were found in Rev. Proc. 2000-15, 2000-1 C.B. 447.  This Court has upheld the use of these procedures in reviewing a negative determination.  See, e.g., Washington v. Commissioner, supra at 147-152; Jonson v. Commissioner, supra at 125-126.

Seven threshold conditions must be satisfied before the Commissioner will consider a request for relief under section 6015(f).  Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448. Respondent agrees petitioner satisfies those threshold conditions.

Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, lists three conditions, which, if met, ordinarily will persuade the Commissioner to grant relief from unpaid liabilities reported on a joint return.  As applicable here, these conditions are:

> (a)  At the time relief is requested, the requesting spouse is no longer married to * * * the nonrequesting spouse * * *;

(b) At the time the return was signed, the requesting spouse had no knowledge or reason to know that the tax would not be paid.  The requesting spouse must establish that it was reasonable for the requesting spouse to believe that the nonrequesting spouse would pay the reported liability * * *; and

(c) The requesting spouse will suffer economic hardship if relief is not granted * * *.

If relief is not available under Rev. Proc. 2000-15, sec. 4.02, the Commissioner may nevertheless grant relief under the general provisions of Rev. Proc. 2000-15, sec. 4.03(1), 2000-1 C.B. at 448, which provides a list of factors the Commissioner considers when deciding whether to grant relief.  No single factor will be determinative of whether equitable relief will be granted in any particular case.  Rather, all factors will be considered and weighed appropriately.  The list of factors is not intended to be exhaustive.  See Washington v. Commissioner, supra at 147-148; Jonson v. Commissioner, supra at 125.

Rev. Proc. 2000-15, sec. 4.03, lists the following four factors whose presence the Commissioner weighs in favor of granting relief and whose absence the Commissioner weighs against granting relief:  (1) The requesting spouse would suffer economic hardship if relief is denied; (2) the unpaid liability is attributable to the nonrequesting spouse; (3) in the case of a liability that was properly reported but not paid, the requesting spouse did not know and had no reason to know the reported liability would be unpaid at the time the return was signed (the absence of this factor is an "extremely strong factor weighing

against relief"); and (4) the nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the unpaid liability (this factor weighs against relief only if the requesting spouse has the obligation). See Demirjian v. Commissioner, supra.

Petitioner's failure to introduce current evidence of economic hardship weighs against granting relief. Economic hardship is defined as an inability to meet reasonable basic living expenses. Sec. 301.6343-1(b)(4), Proced. & Admin. Regs. Petitioner did not introduce into evidence her financial records, such as her current salary, basic living expenses, and amounts of other debts, that are necessary to support her claim that she will not be able to pay reasonable basic living expenses if relief is not granted. Although petitioner and Mr. Ogonoski have had a history of financial problems throughout their marriage that suggests petitioner may not be able to pay the tax liabilities if respondent attempts to collect the unpaid taxes from her, she has not introduced any evidence of her current financial standing to enable us to conclude she will suffer economic hardship if relief is denied.

The attribution factor weighs in favor of granting relief. The unpaid liabilities are solely attributable to Mr. Ogonoski. A substantial portion of the unpaid balances is attributable to Social Security self-employment tax on Mr. Ogonoski's excavating business income. Petitioner timely paid more than her share of

the joint tax liabilities in full through withholdings from her salary. Petitioner did not own any part of or have any control over Mr. Ogonoski's finances or business.

The legal obligation factor is neutral or inapplicable in this case because petitioner is not divorced or separated and there is no agreement between petitioner and Mr. Ogonoski regarding responsibility for payment of the unpaid liabilities.

The primary reason we deny petitioner relief is that petitioner knew or had reason to know Mr. Ogonoski would not pay the reported liabilities when the returns were signed and filed. Rev. Proc. 2000-15, supra, characterizes this factor as "an extremely strong factor" weighing against relief.

In order for the no-knowledge-or-reason-to-know factor to be present, petitioner must establish (1) that at the time she signed the joint returns for each of the years at issue, she had no knowledge or reason to know that the tax reported in each of those returns would not be paid, and (2) that it was reasonable for her to believe Mr. Ogonoski would pay the tax reported on each return. See Collier v. Commissioner, T.C. Memo. 2002-144.

Petitioner admitted several times in her petition and brief that she knew at the times the returns were signed and filed that the tax liabilities were not being paid on or before the due date because the "same pattern" of not paying the tax liabilities reported on the returns "existed in the past". See, e.g., Feldman v. Commissioner, T.C. Memo. 2003-201 (when the 1997

return was filed, the requesting spouse was aware that no estimated tax payments had been made on the 1997 liabilities and that only a $500 payment was made at the time of filing; the requesting spouse thus had actual knowledge of the unpaid liabilities for 1997 at the time the return was filed).

There is no record evidence Mr. Ogonoski promised petitioner he would pay the tax liabilities reported on their returns or that he deceived her into believing he would do so. Each return as filed showed a balance due. Yet petitioner continued to sign and file joint returns with Mr. Ogonoski for the 11 consecutive years for which she originally requested relief. It was unreasonable for her to believe Mr. Ogonoski would suddenly change his "pattern" and pay the reported tax liabilities just because he had paid the back taxes once before. Without any knowledge of whether Mr. Ogonoski's financial circumstances would enable him to pay the liabilities, petitioner's professed belief that he would do so amounts to a triumph of hope over experience in which neither we nor respondent are required to join. In continuing to sign and file joint returns with Mr. Ogonoski showing taxes due, petitioner assumed the risk that she would be called upon to satisfy the joint liabilities shown on those returns.

When petitioner realized Mr. Ogonoski was not paying his share of their tax liabilities, she could have protected herself from liability by filing separate returns. Petitioner claims to

believe a married couple should file joint income tax returns.[4]

We note, however, that in exchange for assuming joint and several liability for Mr. Ogonoski's taxes by filing jointly, petitioner became entitled to and received certain tax advantages. We explained the reason for the provisions establishing joint and several liability in Sonnenborn v. Commissioner, 57 T.C. 373, 380-381 (1971), as follows:

> It is important that these provisions be kept in proper perspective. The filing of a joint return is a highly valuable privilege to husband and wife since the resulting tax liability is generally substantially less than the combined taxes that would be due from both spouses if they had filed separate returns. This circumstance gives particular emphasis to the statutory rule that liability with respect to tax is joint and several, regardless of the source of the income or of the fact that one spouse may be far less informed about the contents of the return than the other, for both spouses ordinarily benefit from the reduction in tax that ensues by reason of the joint return. * * *

See also Murphy v. Commissioner, 103 T.C. 111, 117 (1994).

When petitioner voluntarily signed the returns with the knowledge of Mr. Ogonoski's "pattern" of nonpayment, petitioner assumed the risk Mr. Ogonoski would not pay the reported liabilities.

---

[4]Petitioner cannot persuasively claim she was unaware she could file separately from Mr. Ogonoski because the instructions to Form 1040, U.S. Individual Income Tax Return, inform married taxpayers they have the right to file separately, and the Form 1040 that she signed allows the taxpayer to check a box for "married filing separate return" status. Petitioner's failure to know or understand the tax laws is not a defense. See Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002).

Petitioner knew the amount of the reported tax liability and balance due on each return because she signed and helped prepare the returns. Petitioner is presumed to have knowledge of the tax consequences of signing the returns with reported tax liabilities that were unpaid. See Cheshire v. Commissioner, 115 T.C. at 197 (quoting Stevens v. Commissioner, 872 F.2d 1499, 1505 n.8 (11th Cir. 1989), affg. T.C. Memo. 1988-63).

Petitioner claims that excess tax was withheld from her wages. In return for the privilege of filing jointly, any excess withholdings from petitioner's wages were credited to petitioner's and Mr. Ogonoski's unpaid tax liabilities, which is reflected on the "Amount You Owe" line in each of petitioner's Forms 1040.

Rev. Proc. 2000-15, sec. 4.03, lists the following two factors whose presence the Commissioner weighs in favor of granting relief and whose absence the Commissioner treats as neutral: (1) The requesting spouse is separated or divorced from the nonrequesting spouse; and (2) the requesting spouse was abused by the nonrequesting spouse.

The marriage factor is neutral or inapplicable under Rev. Proc. 2000-15, sec. 4.03, because at all relevant times, petitioner and Mr. Ogonoski were married and lived together as husband and wife.

The abuse factor is neutral because there was no evidence Mr. Ogonoski physically or mentally abused petitioner in any

sense to which the tax law or common experience will accord any recognition.

Rev. Proc. 2000-15, sec. 4.03, lists the following two factors whose presence the Commissioner weighs against granting relief and whose absence the Commissioner treats as neutral: (1) The requesting spouse significantly benefited (beyond normal support) from the unpaid liability, and (2) the requesting spouse has not made a good faith effort to comply with Federal income tax laws in the tax years following the tax year to which the request for relief relates.

Although there is no record evidence to establish that Mr. Ogonoski failed to contribute any of his financial resources, including any of his separate funds attributable to the unpaid taxes, to their household for basic living expenses or to pay the mortgage on their $71,000 house, such payments are not lavish expenditures beyond what is required for petitioner's normal support. See, e.g., Foley v. Commissioner, T.C. Memo. 1995-16. There is no evidence Mr. Ogonoski gave petitioner any money in excess of the amounts petitioner required for normal support. Because Mr. Ogonoski controlled the finances of his excavation business and had his own checking accounts related to his business that petitioner did not control or have access to, petitioner was unable to stop Mr. Ogonoski from using for his own personal purposes the funds made available by his failures to pay the taxes due. As stated above, Rev. Proc. 2000-15, supra,

states that the significant benefit factor can only favor the Commissioner.  In contrast, in cases decided under old section 6013(e) in which the spouse seeking relief did not significantly benefit from the omitted income or erroneous deductions attributable to the other spouse, the fact that the taxpayer did not significantly benefit weighed in favor of granting relief. See, e.g., Belk v. Commissioner, 93 T.C. 434, 440-441 (1989); Foley v. Commissioner, supra.  We conclude that this factor favors petitioner.  See Ewing v. Commissioner, 122 T.C. ___, ___ (2004) (slip op. at 22-23); Ferrarese v. Commissioner, T.C. Memo. 2002-249.

The noncompliance factor weighs against granting relief. Petitioner failed to make a good faith effort to comply with Federal income tax laws in the tax years following 1989 though 1997, the tax years for which she requests relief.  Petitioner continued to help prepare, sign, and file tax returns for 1998 and 1999 without paying the reported liabilities on those returns even though she was painfully aware of the "pattern" of nonpayment for returns before 1998.

With respect to the factors under Rev. Proc. 2000-15, sec. 4.03, two factors weigh in favor of relief, three factors weigh against relief, and the other factors are neutral.  Petitioner fails to satisfy any of the three conditions required for relief under Rev. Proc. 2000-15, sec. 4.02.

Petitioner knew or had reason to know at the time she signed the returns that Mr. Ogonoski would not pay the reported liabilities on time, which is "an extremely strong factor" against relief. We find no abuse of discretion in respondent's determination that petitioner and Mr. Ogonoski are jointly liable to pay their substantial joint tax liabilities, estimated tax and nonpayment penalties, and accumulated interest. Because petitioner knew the taxes were not being paid currently and might not be paid in the future, she assumed the risk that she would be called upon to pay the remaining joint liabilities should respondent attempt to collect them from her. Considering all the facts and circumstances and applying the relevant conditions and factors under Rev. Proc. 2000-15, supra, as a whole, we hold respondent did not abuse his discretion, i.e., he did not act arbitrarily, capriciously, or without sound basis in fact, in denying petitioner's request for equitable relief under section 6015(f).[5] We sustain respondent's determination denying relief under section 6015(f).

Issue 2. Period of Limitation

Petitioner asks us to decide whether the period of limitation for collection of her 1989 unpaid tax liability has

---

[5]This is not a case like Foor v. Commissioner, T.C. Memo. 2004-54, in which the presence of a whole panoply of factors favoring relief overcame the significance of the taxpayer's reason to know the reported tax liabilities would not be paid. See Washington v. Commissioner, 120 T.C. 137, 150-151 (2003).

expired.  Respondent contends we do not have jurisdiction under section 6015(e) to review this issue.

We are a court of limited jurisdiction and may exercise our power only to the extent authorized by Congress.  Gati v. Commissioner, 113 T.C. 132, 133 (1999); Naftel v. Commissioner, 85 T.C. 527, 529 (1985).

In her stand-alone petition, petitioner invoked our jurisdiction under section 6015(e) to review respondent's denial of her request for relief from joint and several liability. Section 6015(e)(1) limits our jurisdiction to reviewing respondent's denial of the specific relief contemplated under section 6015.  See Block v. Commissioner, 120 T.C. 62, 64-65 (2003); Ewing v. Commissioner, 118 T.C. at 499; Butler v. Commissioner, 114 T.C. at 290.  We do not have jurisdiction to decide whether the period of limitation has expired because petitioner's request that we review the limitation issue goes beyond the specific relief contemplated by section 6015.  See Block v. Commissioner, supra.[6]

To reflect the foregoing,

---

[6]Although our lack of jurisdiction precludes us from deciding the limitation issue, we are satisfied the 10-year period of limitation on petitioner's 1989 tax liability, see sec. 6502(a)(1), has been substantially extended as a result of petitioner's and Mr. Ogonoski's filing petitions for bankruptcy in 1992 and 1993, see sec. 6503(h), and remains extended by the pendency of this proceeding, see sec. 6015(e)(2).

Decision will be entered

for respondent.