T.C. Summary Opinion 2005-126

UNITED STATES TAX COURT

CAROLYN A. GLENN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9199-04S.                    Filed August 16, 2005.

<u>Saul R. Sodos</u>, for petitioner.

<u>Tom D. Yang</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $16,584 in the joint Federal income tax of petitioner and petitioner's former spouse, Timothy J. Glenn (Mr. Glenn),[1] and an accuracy-related penalty of $3,317 pursuant to section 6662(a) for the taxable year 2001.

After concessions, the issue for decision is whether respondent abused his discretion in denying petitioner relief from joint and several liability for the tax deficiency and accuracy-related penalty pursuant to section 6015.[2]

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Hoffman Estates, Illinois, on the date the petition was filed in this case.

---

[1]Timothy J. Glenn's case at docket No. 7249-04S was tried consecutively with petitioner's case on this Court's Chicago, Illinois, session beginning Nov. 29, 2004. These cases were not consolidated because of an objection by petitioner.

[2]A joint notice of deficiency was mailed to petitioner and Mr. Glenn on Feb. 25, 2004. Mr. Glenn filed a timely petition with this Court on Apr. 26, 2004, at docket No. 7249-04S seeking a redetermination of the deficiency relating to the additional tax under sec. 72(t) and the accuracy-related penalty pursuant to sec. 6662(a). Petitioner filed her petition on June 3, 2004. This Court has no jurisdiction to redetermine the deficiency related to the additional tax under sec. 72(t) nor the accuracy-related penalty pursuant to sec. 6662(a) as to petitioner's petition because the petition for such redetermination would be untimely.

Petitioner and Mr. Glenn were married on July 8, 1989. For taxable year 2001, petitioner and Mr. Glenn filed a timely joint Federal income tax return. During the year in issue, petitioner and Mr. Glenn were married and resided in the same household; however, they occupied separate rooms in the household. Their 2001 Federal income tax return was signed and dated by both of them on April 10, 2002. Petitioner and Mr. Glenn executed the 2001 return voluntarily. Petitioner had filed for divorce from Mr. Glenn in October of 2001. They were divorced on November 13, 2002. Their judgment for dissolution of marriage provided:

> That each party shall be responsible for the payment of all credit card bills and all other debts in his or her name alone. Each shall hold the other harmless and indemnify the other from the respective indebtedness.

However, the judgment for dissolution of marriage did not address payment of joint liabilities.

On their jointly filed 2001 tax return, petitioner and Mr. Glenn reported wage income of $157,301, interest income of $350, and total pension and annuity income of $165,838.[3] Petitioner and Mr. Glenn reported adjusted gross income of $323,489 and claimed deductions of $31,811 on Schedule A, Itemized Deductions. Their 2001 income tax return reported a total tax of $86,293 and a net amount owed of $21,438 after reducing their total tax by the amount of income tax withheld.

---

[3]This amount is rounded to the nearest dollar.

During the taxable year 2001, Mr. Glenn earned wages from two sources: $58,502.61 from Ceridian Corp. from which $11,122.24 of Federal income tax was withheld; and $74,219.76 from Kronos, Inc., from which $14,984.69 of Federal income tax was withheld.

During the taxable year 2001, petitioner earned wages of $24,577.99 from Community Unit School District #220, and Federal income tax of $1,704.43 was withheld. Also during the tax year 2001, petitioner and Mr. Glenn received pension and annuity income of $165,838 from Mr. Glenn's section 401(k) plan account held by Fidelity Investments from which $33,167.58 of Federal income tax was withheld.

The $165,838 petitioner and Mr. Glenn reported as pension and annuity income during the taxable year 2001 was a distribution from Mr. Glenn's section 401(k) plan maintained by his employer, Kronos, Inc., through T. Rowe Price. Mr. Glenn had been employed at Kronos, Inc., since 1988. This distribution was made approximately in June of 2001. Mr. Glenn's reasons for requesting the distribution were that he was leaving Kronos, Inc., and he and petitioner were considering divorce and wanted to pay off outstanding bills to make their divorce "as simple as possible".

Mr. Glenn received a check from Fidelity Investments in the amount of $132,670.30.[4]  In August of 2001, Mr. Glenn deposited $123,700 into his and petitioner's joint checking account with Harris Trust & Savings Bank.[5]  Mr. Glenn could not recall why the whole amount of $132,670.30 was not deposited in the joint checking account.  Petitioner and Mr. Glenn had opened this joint checking account before 1990.  Mr. Glenn also deposited his paychecks in the joint checking account.  However, petitioner did not deposit her paychecks into the joint checking account; instead, she had a separate personal checking account where she deposited her paychecks.

During the period from July 27 through December 31, 2001, Mr. Glenn wrote checks totaling $66,082.07 drawn on the Harris Trust & Savings Bank joint checking account as follows:

---

[4]This amount represents the total sec. 401(k) distribution of $165,838, less Federal income tax withheld of $33,167.58.

[5]Mr. Glenn transferred $100,000 from the joint checking account into a joint savings account which was also held with Harris Trust & Savings Bank.  Mr. Glenn transferred money from the savings account to the checking account, as needed, to cover checks written on and withdrawals from the checking account.  Mr. Glenn used the savings account to earn interest while the large sum of money was not being used.

| Date | Check No. | Description | Amount |
|------|-----------|-------------|--------|
| 7/27/2001 | 136 | Payable to: Discover | $2,700.00 |
| 8/1/2001 | 137 | Payable to: Citibank | 3,450.55 |
| 8/21/2001 | 147 | Payable to: First USA | 23,000.00 |
| 9/5/2001 | 164 | Payable to: Citibank | 6,938.63 |
| 9/5/2001 | 165 | Payable to: Union Federal | 27,701.51 |
| 9/29/2001 | 185 | Payable to: First USA | 1,215.40 |
| 10/24/2001 | 204 | Payable to: First USA | 1,075.98 |
| Total | | | 66,082.07 |

Both petitioner's and Mr. Glenn's names were on their credit cards financed through Discover, Citibank, and First USA, and both of their names were on the home mortgage note they received from Union Federal. Therefore, petitioner and Mr. Glenn were jointly liable for the credit card debts and home mortgage which were paid by the above checks.

From the record, the remaining $57,617.93, which was deposited into the joint savings and checking accounts, was not readily traceable. However, on November 28, 2001, the balance in the joint savings account was $57,878.32.

As stated previously, petitioner and Mr. Glenn reported pension and annuity income of $165,838 on their joint Federal income tax return for taxable year 2001. However, they did not report on their 2001 joint Federal income tax return the 10-percent additional tax imposed by section 72(t) on early withdrawals from qualified retirement plans. Accordingly, on February 25, 2004, respondent issued petitioner and Mr. Glenn a notice of deficiency for taxable year 2001. In the notice of deficiency, as previously stated, respondent determined that petitioner and Mr. Glenn were liable for a tax deficiency of

$16,584 because of their failure to report and pay the 10-percent additional tax imposed by section 72(t) and that they were liable for an accuracy related penalty pursuant to section 6662(a) of $3,317.

Petitioner concedes that the total amount of $165,838 of pension and annuity income reported on the return is subject to the 10-percent additional tax under section 72(t) on early withdrawals. After the date of the notice of deficiency, Mr. Glenn tendered to respondent payment of $8,267, approximately one-half of the amount of the 10-percent additional tax.

On August 31, 2003, petitioner filed a Form 8857, Request for Innocent Spouse Relief, with respondent, requesting innocent spouse relief with respect to the 2001 tax liability incurred as a result of the 10-percent additional tax under section 72(t). On December 18, 2003, respondent made a preliminary determination that petitioner did not qualify for innocent spouse relief under section 6015. On June 3, 2004, petitioner filed with the Court a petition for determination of relief from joint and several liability on a joint return with regard to her tax liability incurred as a result of the 10-percent additional tax for the taxable year 2001.

Petitioner contends that she is not liable for the unpaid additional tax liability remaining from the early withdrawal and

the accuracy-related penalty.[6]  According to petitioner, it was Mr. Glenn's sole responsibility to maintain their household finances; she had no knowledge or control of their household finances during tax year 2001 or prior years; she had no knowledge of the existence of Mr. Glenn's section 401(k) plan maintained by his employer, Kronos, Inc., through T. Rowe Price; she did not know that the proceeds were withdrawn by Mr. Glenn during tax year 2001 and placed into their joint accounts with Harris Trust & Savings Bank; and she had no control of the proceeds which were placed in the joint accounts with Harris Trust & Savings Bank.  On these grounds, petitioner contends that pursuant to section 6015(f) she is eligible for relief from joint liability on the unpaid additional tax liability remaining from the early withdrawal.

## Discussion

Except as otherwise provided in section 6015, petitioner bears the burden of proof.  See Rule 142(a); Alt v. Commissioner,

---

[6]In Glenn v. Commissioner, at docket No. 7249-04S, we found that Mr. Glenn acted with reasonable cause and good faith as to the underpayment attributable to the unreported 10-percent additional tax under sec. 72(t).  Accordingly, we held that Mr. Glenn is not liable for the accuracy-related penalty pursuant to sec. 6662(a).  Because we held that Mr. Glenn was not liable for the accuracy-related penalty, we would assume that respondent would not collect the accuracy-related penalty from petitioner, even though she is unable in the present proceeding to challenge the underlying liability of her and Mr. Glenn's tax deficiency for taxable year 2001.

119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

As a general rule, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse generally is jointly and severally liable for the entire tax due for that taxable year. Sec. 6013(d)(3). In certain situations, however, a joint return filer can avoid such joint and several liability by qualifying for relief therefrom under section 6015.[7]

Section 6015 provides three avenues for obtaining relief to a taxpayer who has filed a joint return: (1) Section 6015(b) provides full or apportioned relief with respect to understatements of tax attributable to certain erroneous items on the return; (2) section 6015(c) provides relief for a portion of an understatement of tax for taxpayers who are separated or divorced; and (3) section 6015(f) (potentially the broadest of the three avenues) confers upon the Secretary discretion to grant equitable relief for taxpayers who otherwise do not qualify for relief under section 6015(b) or (c).

Petitioner requested relief pursuant to section 6015(f) from liability for the unpaid amount of additional tax liability

---

[7]Sec. 6015 was enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201, 112 Stat. 734. Before the enactment of sec. 6015, relief from the imposition of joint and several liability for spouses filing joint returns was available under sec. 6013(e).

remaining from the 10-percent additional tax imposed by section 72(t) and the accuracy-related penalty imposed under section 6662(a).  Respondent determined that petitioner was not entitled to the requested relief.

If a taxpayer's request for relief under section 6015 is denied, the taxpayer may petition this Court, pursuant to section 6015(e)(1), for a review of the determination.  Section 6015(e)(1)(A)[8] provides that a taxpayer against whom a deficiency has been determined and who elects to have section 6015(b) or (c) apply may petition this Court "to determine the appropriate relief available to the individual" under section 6015, including relief under section 6015(f).  Fernandez v. Commissioner, 114 T.C. 324, 330-331 (2000).

In the present case, petitioner does not seek relief under section 6015(b) or (c).  Petitioner has conceded that she is not eligible for relief under these subsections.  Therefore, the only opportunity for relief available to petitioner is section 6015(f).  Section 6015(f) provides as follows:

---

[8]     SEC. 6015(e).  Petition for Review by Tax Court.--

        (1) In general.--In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply--

            (A) In general.--In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section if such petition is filed--

SEC. 6015(f).  Equitable Relief.--Under procedures prescribed by the Secretary, if--

(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

As directed by section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2003-61, 2003-2 C.B. 296,[9] to be considered in determining whether an individual qualifies for relief under section 6015(f).  Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, lists seven conditions which must be satisfied before the Commissioner will consider a request for relief under section 6015(f).

Rev. Proc. 2003-61, sec. 4.03(2), 2003-2 C.B. at 298, lists nonexclusive factors that the Commissioner will consider in determining whether, taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for all or part of the unpaid income tax liability

---

[9]This revenue procedure superseded Rev. Proc. 2000-15, 2000-1 C.B. 447, and is effective either for requests for relief filed on or after Nov. 1, 2003, or for requests for which no preliminary determination letter was issued as of Nov. 1, 2003. In the present case, the request for relief was still pending as of Nov. 1, 2003, and the preliminary determination letter was issued on Dec. 19, 2003; therefore, Rev. Proc. 2003-61, 2003-2 C.B. 296, is applicable in the present situation.

or deficiency, and full or partial equitable relief under section 6015(f) should be granted.  Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298, provides that the following factors are relevant to whether the Commissioner will grant equitable relief:  (1) Marital status, (2) economic hardship, (3) knowledge or reason to know, (4) the nonrequesting spouse's legal obligation, (5) significant benefit, (6) compliance with income tax laws, (7) abuse, and (8) mental or physical health.  Further, Rev. Proc. 2003-61, supra, provides that no single factor will be determinative, but that all relevant factors, regardless of whether the factor is listed in Rev. Proc. 2003-61, sec. 4.03, will be considered and weighed.

To prevail under section 6015(f), petitioner must show that respondent's denial of equitable relief from joint liability under section 6015(f) was an abuse of discretion.  See Washington v. Commissioner, 120 T.C. 137 (2003); Jonson v. Commissioner, 118 T.C. 106, 125 (2002) (citing Butler v. Commissioner, 114 T.C. 276, 292 (2000)), affd. 353 F.3d 1181 (10th Cir. 2003).  Action constitutes an abuse of discretion under this standard where it is arbitrary, capricious, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19, 23 (1999).  The question of whether respondent's determination was arbitrary, capricious, or without sound basis in fact is a question of fact.  Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th

Cir. 2002). In deciding whether respondent's determination that petitioner is not entitled to relief under section 6015(f) was an abuse of discretion, we consider evidence relating to all the facts and circumstances.

Respondent contends: (1) Petitioner voluntarily signed the 2001 joint Federal income tax return which reported the section 401(k) distribution of $165,838; (2) the proceeds of the section 401(k) plan were put into joint savings and checking accounts to which petitioner had access; (3) petitioner obtained benefits from the section 401(k) distribution proceeds through the use of those proceeds to pay off petitioner's and Mr. Glenn's joint liabilities; (4) petitioner would not suffer economic hardship if the Service did not grant relief from the income tax liability; and (5) petitioner has not demonstrated that she made a good faith effort to comply with Federal income tax laws. Respondent asserts that these factors weigh against granting relief to petitioner. We now address each of the factors of Rev. Proc. 2003-61, sec. 403, separately.

1. Marital Status

During 2001, petitioner and Mr. Glenn were married and resided in the same household; however, they occupied separate rooms in the household and considered themselves separated. Petitioner filed for divorce in October of 2001. Petitioner and

Mr. Glenn were divorced on November 13, 2002. This factor weighs in favor of granting relief to petitioner.

## 2. Economic Hardship

Respondent contends that petitioner offered no evidence that she would suffer economic hardship if relief were denied. Pursuant to section 301.6343-1(b)(4)(ii), Proced. & Admin. Regs., economic hardship exists if a levy will cause a taxpayer to be unable to pay his/her reasonable basic living expenses. Respondent maintains that respondent's collection activity would not leave petitioner unable to pay her basic living expenses.[10]

---

[10]Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs., provides:

> (ii) Information from taxpayer. In determining a reasonable amount for basic living expenses the director will consider any information provided by the taxpayer including--
>
> > (A) The taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else;
> >
> > (B) The amount reasonably necessary for food, clothing, housing, (including utilities, home-owner insurance, home-owner dues, and the like), medical expenses (including health insurance), transportation, current tax payments (including federal, state, and local), alimony, child support, or other court-ordered payments, and expenses necessary to the taxpayer's production of income (such as dues for a trade union or professional organization, or child care payments which allow the taxpayer to be gainfully employed);
> >
> > (C) The cost of living in the geographic area in which the taxpayer resides;
> >
> > (D) The amount of property exempt from levy which is available to pay the taxpayer's expenses;

(continued...)

In addition, respondent asserts that petitioner provided no documentation to contradict these contentions or to demonstrate an economic hardship.

On Form 12510, Questionnaire for Requesting Spouse, petitioner stated her necessary monthly living expenses as approximately $3,136 per month. Also on Form 12510, petitioner stated her total monthly income as approximately $3,500, consisting of her earned wages of $2,400 per month and child support of $1,100 received per month. On the basis of these facts, respondent determined that petitioner would not suffer economic hardship if relief was not granted. Petitioner did not supply any evidence at trial to contradict the above facts or the determination of respondent; therefore, we find that petitioner will not suffer economic hardship if relief is not granted. This factor favors denying relief.

3. <u>Knowledge or Reason To Know</u>

In the case of an income tax liability that arose from a deficiency, the fact that the requesting spouse did not know and had no reason to know of the item giving rise to the deficiency

---

[10](...continued)

> (E) Any extraordinary circumstances such as special education expenses, a medical catastrophe, or natural disaster; and

> (F) Any other factor that the taxpayer claims bears on economic hardship and brings to the attention of the director.

is a factor in favor of granting relief.  Rev. Proc. 2003-61,
sec. 4.03(2)(a)(iii)(B).  By contrast, the fact that the
requesting spouse knew or had reason to know of the item giving
rise to the deficiency is a factor weighing against relief.  Id.

Petitioner contends that she did not know and had no reason
to know of the distribution from Mr. Glenn's section 401(k) plan
which gave rise to:  (1) The deficiency resulting from the 10-
percent early withdrawal additional tax, and (2) the accuracy-
related penalty imposed under section 6662(a).  Petitioner
testified:  (1) It was Mr. Glenn's sole responsibility to
maintain their household finances; (2) she had no knowledge or
control of their household finances during tax year 2001 or prior
years; (3) she had no knowledge of the existence of Mr. Glenn's
section 401(k) plan maintained by his employer, Kronos, Inc.,
through T. Rowe Price, nor did she know that the proceeds were
withdrawn by Mr. Glenn during tax year 2001 and placed into their
joint accounts with Harris Trust & Savings Bank; and (4) she had
no control of the proceeds which were placed into the joint
accounts with Harris Trust & Savings Bank.

However, petitioner voluntarily signed the 2001 joint return
and admitted that she did not review the joint return before
filing.  The distribution from Mr. Glenn's section 401(k) plan
maintained by his employer, Kronos, Inc., through T. Rowe Price,
was reported on petitioner and Mr. Glenn's 2001 joint return.

Also, petitioner had access to the joint accounts where the proceeds of the distribution were deposited. Thus, petitioner knew or had reason to know of the item which gave rise to the taxable year 2001 deficiency and the accuracy-related penalty. This factor favors denying relief to petitioner.

4. <u>Nonrequesting Spouse's Legal Obligation</u>

As previously noted, petitioner and Mr. Glenn's judgment for dissolution of marriage provided:

> That each party shall be responsible for the payment of all credit card bills and all other debts in his or her name alone. Each shall hold the other harmless and indemnify the other from the respective indebtedness.

However, the judgment for dissolution of marriage did not address payment of joint liabilities.

Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv), indicates that if Mr. Glenn had a legal obligation under the judgment for dissolution of marriage to pay the tax liabilities, then that fact would weigh in favor of granting relief to petitioner. Likewise, if the judgment for dissolution of marriage had placed the obligation to pay the taxes on petitioner, then that fact would weigh against granting relief to her as indicated in Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv). In the present case, the judgment for dissolution of marriage is silent as to each party's obligation to pay taxes. Therefore, we will assume each party is liable for 50 percent of the liabilities. Thus, this is a neutral factor.

5. <u>Significant Benefit</u>

Respondent contends that petitioner received benefits from the proceeds of the section 401(k) distribution in the form of: (1) Payment of joint credit card liabilities; (2) payment of the second mortgage held by Union Federal; (3) payment of petitioner and Mr. Glenn's 2001 joint tax liability; and (4) payment of attorney's fees relating to petitioner and Mr. Glenn's divorce.

However, petitioner contends that she did not accumulate the credit card debts; therefore, the payment of those liabilities should not be considered a benefit to her. Petitioner further contends that the other referenced payment benefits to her were paid by Mr. Glenn's salary and not the proceeds from the section 401(k) distribution.

Petitioner admitted at trial that her name was on the credit card accounts and that she used one of the credit cards to make purchases. Petitioner also admitted at trial that her name was on the mortgage note. While it is not totally clear from the record where all of the proceeds from the section 401(k) plan can be traced, it seems logical to the Court that the large amounts of the credit card liabilities, the second mortgage, and the 2001 joint tax liability were satisfied because of the distribution from Mr. Glenn's section 401(k) plan. Therefore, we find that petitioner did benefit from the proceeds of the section 401(k) distribution.

6. Compliance With Income Tax Laws

In his pretrial memorandum, respondent contends that "petitioner has not demonstrated that she made a good faith effort to comply with federal income tax laws."

To the contrary, in her pretrial memorandum, petitioner contends that she has complied with the income tax laws.

Respondent did not produce any evidence that supported his contention. Therefore, we consider this factor neutral.

7. Abuse

Petitioner conceded that she was not abused by Mr. Glenn and that she was not coerced into executing the 2001 joint Federal income tax return. Lack of spousal abuse is a factor listed in Rev. Proc. 2003-61, sec. 4.03(2)(b)(i), that will weigh in favor of equitable relief if found but will not weigh against equitable relief if not present in a case. Therefore, this factor is neutral.

## Conclusion

The factors that weigh against granting relief to petitioner outweigh those factors favoring relief. Therefore, under these facts and circumstances, we hold that respondent did not abuse his discretion in denying equitable relief to petitioner under section 6015(f).

Reviewed and adopted as the report of the Small Tax Case Division.

An appropriate decision

will be entered for respondent.