T.C. Summary Opinion 2010-177


UNITED STATES TAX COURT


ESTATE OF HARRIET SOMMER, DECEASED, SHARI SOMMER CHERNACK,
ADMINISTRATRIX, Petitioner[1] v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4664-09S.                Filed December 28, 2010.


Frank Agostino, Erica Son, and Jeffrey Dirmann (student),

for petitioner.

Marie E. Small, for respondent.


PANUTHOS, Chief Special Trial Judge:  This case was heard

pursuant to the provisions of section 7463 of the Internal

---

[1]This case was called for trial and heard on Apr. 12, 2010.
Harriet Sommer died on May 9, 2010.  The administratrix of the
Estate of Harriet Sommer filed a motion for substitution of
parties and to change caption on Aug. 4, 2010.  The Court granted
that motion on Aug. 17, 2010.

Revenue Code in effect when the petition was filed.[2]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

This proceeding was commenced under section 6015 for review of respondent's determination that Harriet Sommer (Mrs. Sommer) is not entitled to relief from joint and several liability with respect to an underpayment of Federal income tax reported on a joint Federal income tax return filed for 2005.

Background

Some of the facts have been stipulated and are so found. The stipulations and the attached exhibits are incorporated herein by this reference.  Mrs. Sommer resided in the State of New York at the time the petition was filed.

At the time of trial Mrs. Sommer was a 72-year-old school teacher.  She held a master's degree in education and had taught for over 20 years.  Mrs. Sommer was widowed in 2006 after 43 years of marriage.  Her now-deceased husband (Mr. Sommer) was a self-employed attorney.  Mrs. Sommer was not involved with Mr. Sommer's legal practice.  In 2005 Mr. Sommer received remuneration that was in excess of his usual earnings.  Mrs. Sommer asked Mr. Sommer to set aside one-half of the proceeds to

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended.  All Rule references are to the Tax Court Rules of Practice and Procedure.

pay the tax that would be due on the remuneration, which Mr. Sommer agreed to do. Contrary to the understanding, Mr. Sommer did not set aside any money for the payment of the tax owed.

Mr. Sommer made all of the business and financial decisions for the household, and Mrs. Sommer trusted Mr. Sommer's decisions and declarations concerning those matters, which included the filing of the couple's joint Federal income tax returns. Mr. Sommer timely requested and received extensions to file the couple's joint Federal income tax returns for tax years 2000 through 2004. Mrs. Sommer did not review the 2000 through 2004 returns before signing them. Although no remittance was made with any of the returns, all balances due were paid before any collection activity had commenced.

As he had in the preceding tax years, Mr. Sommer timely requested and was granted an extension to file the couple's 2005 joint Federal income tax return (the return). Mr. Sommer died on June 23, 2006, after requesting an extension but before the return was filed. Mr. Sommer's accountant signed the return as the preparer on July 5, 2006, and mailed it to Mrs. Sommer for her signature. Mrs. Sommer signed the return shortly thereafter as a surviving spouse, and the return was received by the Internal Revenue Service (IRS) on August 4, 2006. The return reflected tax due of $37,692. No payment was remitted with the return.

Mrs. Sommer received "a letter from the IRS" explaining that it might place a lien[3] upon her property if the 2005 tax liability was not paid. She contacted the accountant who prepared the return to request his assistance with the matter, but her request was not answered. Mrs. Sommer paid a lump sum of $25,000 on April 15, 2007, and entered into an installment agreement to pay $600 each month to satisfy the remainder of the 2005 liability. No explanation was given as to the source of the $25,000 payment.

Mrs. Sommer filed Form 8857, Request for Innocent Spouse Relief, on September 26, 2007. Respondent sent Mrs. Sommer a Notice of Determination Concerning Your Request for Relief from Joint and Several Liability under section 6015(f) denying her request for relief. The stated reason for the denial was Mrs. Sommer's failure to establish that she had a reasonable belief the tax would be paid by Mr. Sommer. Mr. Sommer was deceased when the return was filed. At the time of filing the 2005 return Mrs. Sommer owed more than $50,000 in tax, including interest and additions to tax for failure to pay the tax shown on the return and estimated tax.

---

[3]There is no notice of Federal tax lien filing in the record.

At the time of his death Mr. Sommer owed State income tax, credit card debt, and a mortgage debt of approximately $300,000, in addition to the Federal income tax debt. Mrs. Sommer alleviated a portion of her financial burden by refinancing the mortgage on the marital home. Mrs. Sommer and her bank came to an agreement wherein the bank would refinance her mortgage and include the amount necessary to pay off her Federal income tax liability in full in her new loan. At the time of trial Mrs. Sommer no longer had a Federal income tax liability.

### Discussion

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable for the entire tax due for that year. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). A surviving spouse may file a joint return on behalf of herself and the deceased spouse if no executor or administrator is appointed before the due date of the return. Sec. 6013(a)(3). A spouse who has filed a joint return may seek relief from joint and several liability under procedures set forth in section 6015. Sec. 6015(a).

Under section 6015(a) a spouse may seek relief from joint and several liability under section 6015(b) or, if eligible, may allocate liability according to provisions set forth in section 6015(c). If a taxpayer does not qualify for relief under either section 6015(b) or (c), the taxpayer may seek equitable relief

under section 6015(f). The Secretary has discretion to grant equitable relief to a spouse who filed a joint return with an unpaid liability or to one who has a deficiency (or any portion of either). Sec. 6015(f); sec. 1.6015-4(a), Income Tax Regs.

Except as otherwise provided in section 6015, the taxpayer bears the burden of proving that he or she is entitled to section 6015 relief. Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004). Both the scope and standard of our review in cases requesting equitable relief from joint and several income tax liability are de novo. Porter v. Commissioner, 132 T.C. 203 (2009).

Jurisdiction

Respondent argues that the Court does not have jurisdiction because Mrs. Sommer limited her request to a refund of the section 6651(a)(2) and 6654 additions to tax. Respondent relies upon Block v. Commissioner, 120 T.C. 62 (2003), to argue that the Court does not have jurisdiction over Mrs. Sommer's case because section 6015(e) "presupposes that the liability for any unpaid tax or deficiency is not in dispute and does not provide for an individual's challenge to the existence or amount of his or her underlying liability."

Respondent's reliance on Block is misplaced. The taxpayer in Block sought to amend her petition to assert a statute of limitations defense. The Court held: "The relief from joint and several liability available in a section 6015(e) 'stand alone'

petition does not incorporate preassessment procedures.  Section 6015 assumes that the electing taxpayer is to be relieved from an existing joint tax liability, not whether the underlying joint tax liability exists."  Id. at 68.  The Court also held that "the issue we have jurisdiction to address in a 'stand alone' petition under section 6015(e) is whether the Commissioner erroneously denied equitable relief from an existing joint and several tax liability."  Id. at 66-67.  That is precisely what Mrs. Sommer requested from the Court.  See secs. 6665(a)(2), 7463(f)(1).

Accordingly, we shall consider whether Mrs. Sommer is eligible for innocent spouse relief and a refund.

Innocent Spouse Relief

Mrs. Sommer is not eligible for relief under section 6015(b) or (c) because she had an underpayment of tax on a joint return, not a deficiency or an understatement of tax.  See Rev. Proc. 2003-61, sec. 2.04, 2003-2 C.B. 296, 297.  Therefore, her only avenue for relief is under section 6015(f).  As directed by section 6015(f) and section 1.6015-4, Income Tax Regs., the Commissioner has prescribed guidelines for determining whether a spouse qualifies for relief under subsection (f).  See Rev. Proc. 2003-61, supra.

Respondent conceded that Mrs. Sommer met the threshold conditions to be eligible for section 6015(f) relief found in Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297.  If the threshold conditions are met, the IRS will ordinarily grant

equitable relief with respect to underpayments on joint returns if the following elements are satisfied generally: (1) On the date of the request for relief, the requesting spouse is no longer married to the nonrequesting spouse; (2) on the date the requesting spouse signed the joint return, the requesting spouse had no knowledge or reason to know that the nonrequesting spouse would not pay the income tax liability; and (3) the requesting spouse will suffer economic hardship if the IRS does not grant relief. Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298. The IRS denied relief on the basis of Mrs. Sommer's failure to meet elements (2) and (3).

Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298-299, provides a list of factors for determining whether to grant equitable relief under section 6015(f) to taxpayers who do not qualify for relief under Rev. Proc. 2003-61, sec. 4.02. According to the revenue procedure, no single factor is determinative. Id.; see Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003). We find that the factors of knowledge or reason to know of the underpayment and lack of economic hardship weigh heavily against granting Mrs. Sommer innocent spouse relief.

In an underpayment case, the pertinent question is whether the requesting spouse did not know or had no reason to know that the nonrequesting spouse would not pay the income tax liability. Merendino v. Commissioner, T.C. Memo. 2006-2 (typically, in the

case of a reported but unpaid tax liability, the relevant knowledge is that the tax would not be paid when the return was signed); Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(A), 2003-2 C.B. at 298. Mrs. Sommer signed the return after her husband died. When Mrs. Sommer signed the return, she did not remit any payment. Mrs. Sommer testified that after she signed the return she did not think about it again until alerted by the IRS that the 2005 tax liability was still outstanding. At that point she made a payment to the IRS. The record is void of any evidence as to any plan Mrs. Sommer might have had to pay the tax liability reported on the return before being contacted by the IRS.

Mrs. Sommer asserted that she did not know that the tax would not be paid because she reasonably believed that her husband had set aside funds for that purpose. The fact that funds for payment of taxes are readily available is relevant to the inquiry of whether Mrs. Sommer believed that the taxes would be paid. See Banderas v. Commissioner, T.C. Memo. 2007-129 (a reasonable belief that taxes would be paid must at a minimum include a belief that funds would be on hand within a reasonably short period of time to pay the taxes).

After Mr. Sommer died in June 2006, Mrs. Sommer assumed responsibility for filing the joint return and remitting the payment for the 2005 tax liability. See sec. 6013(a)(3); George v. Commissioner, T.C. Memo. 2004-261 (a taxpayer cannot rely on a deceased spouse to pay a tax liability). As previously stated,

Mrs. Sommer signed the joint return on behalf of herself and her deceased husband in July 2006 and filed the return without remittance. The 2005 liability was paid in part in April 2007, after contact by the IRS, and later the balance of the liability was paid in full after the refinancing of the mortgage on the marital home. Thus, while Mrs. Sommer may have initially believed that there were sufficient funds to pay the 2005 liability, soon after her husband's death and before the signing and filing of the return she must have discovered that, in fact, there were insufficient funds. Mrs. Sommer testified that Mr. Summer left her sufficient funds to pay only his funeral expenses.[4] Since Mrs. Sommer was primarily responsible for the filing of the return and in the best position to know whether the tax would be paid, this factor, knowledge or reason to know, favors denial of relief.

Another factor used to determine whether innocent spouse relief is proper is whether the requesting spouse will suffer economic hardship if the IRS does not grant relief. To determine economic hardship, the IRS will use the factors provided in section 301.6343-1(b)(4), Prosed. & Admin. Regs. Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii) (citing Rev. Proc. 2003-61, sec.

_____

[4]Very limited evidence was presented as to the assets and liabilities of Mr. Sommer's estate or to the identity of his heirs. Such information would have been helpful to determine whether Mrs. Sommer may have had a reasonable belief that the 2005 tax liability could be paid.

4.02(1)(c)).  The pertinent factors here are:  (1) Mrs. Sommer's age, employment status and history, ability to earn, and number of dependents; (2) the amount reasonably necessary for food, clothing, housing (including utilities, homeowners insurance, homeowners dues, and the like), medical expenses (including health insurance), transportation, and current tax payments (including Federal, State, and local); (3) the cost of living in the geographic area in which Mrs. Sommer resided; and (4) any other factor that Mrs. Sommer claimed bears on economic hardship. See sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.  We will examine each factor in turn.

At the time of trial Mrs. Sommer was 72 years old.  She was employed full time as a teacher and had been teaching for 22 years.  Although at the time of trial Mrs. Sommer suffered from a relapse of cancer that might have affected her ability to earn, she was entitled to a pension valued at more than $200,000. There was no evidence presented that Mrs. Sommer had any dependents.

It would appear that Mrs. Sommer did have enough income to satisfy her basic living expenses.  On Form 8857 Mrs. Sommer listed her sources of monthly income and expenses.  There was a surplus of a little more than $200.  Mrs. Sommer's testimony corroborated the amounts of wages and the mortgage payments. Many of the other expenses Mrs. Summer listed exceeded the national and local standards.  See Internal Revenue Manual pt.

5.15.1.3, 5.15.1.8 - 5.15.1.10 (May 9, 2008).[5]  No evidence was presented to explain the circumstances of these expenses nor why they exceeded both local and national standards.

As to the fourth factor, Mrs. Sommer testified to additional bills that Mr. Sommer left unpaid at the time of his death, which included State taxes, credit card debt, and a mortgage.  Mrs. Sommer testified that she paid these debts except for the 30-year mortgage.  Before refinancing her mortgage Mrs. Sommer made a $25,000 payment on the 2005 tax liability and entered into a $600-a-month installment agreement to pay the remainder of the tax liability.  As previously indicated, no evidence was presented to explain the source of the $25,000 payment to the IRS.  Mrs. Summer also failed to explain the source of the additional $600 a month for the installment agreement or how she was able to pay all of her other creditors.

After weighing the pertinent factors of section 301.6343-1(b)(4)(ii), Proced. & Admin. Regs., the Court finds that the economic hardship factor supports denial of relief.

Conclusion

Although there are a number of factors the Court may look to in granting or denying innocent spouse relief, the factors of knowledge or reason to know of the underpayment and lack of economic hardship weigh so heavily against Mrs. Sommer that we

---

[5]Mrs. Sommer's transportation and medical expenses did not exceed the national and local standards.

need not go further.  Mrs. Sommer is ineligible for innocent spouse relief for the 2005 Federal income tax liability.

We have considered the parties' arguments and, to the extent not discussed herein, we conclude the arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.