**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 3, 2013

No. 12-60080

Lyle W. Cayce
Clerk

MARY E. HAGGERTY,

Petitioner-Appellant

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee

Appeal from the Decision
of the United States Tax Court
(15589-09)

Before DAVIS, JONES, and SMITH, Circuit Judges.

PER CURIAM:[*]

Petitioner-Appellant Mary Haggerty sought innocent spouse relief from joint and several liability for the underpayment of taxes reflected on her 2006 joint income tax return pursuant to I.R.C. § 6015(f). The Tax Court denied Haggerty's request for innocent spouse relief, and Haggerty appeals that denial. For the following reasons, we AFFIRM the judgment of the Tax Court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60080

I.

Appellant Mary Haggerty ("Ms. Haggerty") was married to Timothy Haggerty ("Mr. Haggerty") for 37 years before he died unexpectedly. Ms. Haggerty alleges that her husband was a big, intimidating man and that he verbally abused her. She also alleges he was secretive about his finances and maintained several accounts which she knew nothing about.

On October 21, 2004, Mr. Haggerty, against Ms. Haggerty's wishes, borrowed $70,952 using their homestead as collateral, creating a second lien against the home. Ms. Haggerty signed the promissory note because her name was on the title, but she alleges she did not receive the loan proceeds or benefit in any way from the loan.

On July 7, 2006, Mr. Haggerty liquidated a $73,530 IRA (after withdrawal charges and fees he received a net distribution of $67,711) without withholding any federal income tax from the distribution. Ms. Haggerty had no knowledge of this "secret" transaction and did not receive any funds from the liquidation. On July 12, 2006, Mr. Haggerty used the money he received from the IRA to pay off the balance of the second lien on the family home in the amount of $66,628. Ms. Haggerty did not learn that Mr. Haggerty had liquidated the IRA or that he had used the proceeds to pay off the second lien until after the fact when she found a copy of the release of the lien in the mail in late August 2006.

Mr. Haggerty died intestate on September 13, 2006, from a heart attack. After his death, Ms. Haggerty began receiving tax notices she did not understand, so she hired a CPA to prepare the spouses' 2006 tax return. The CPA prepared a joint income tax return and did not advise Ms. Haggerty of the possibility of filing separate returns or making a separate liability election. Because Mr. Haggerty had not withheld any taxes from the liquidation of the IRA, the 2006 joint income tax return reflected $25,343 due in taxes. Ms. Haggerty, relying on the CPA, signed the joint income tax return and submitted

No. 12-60080

$5,300—the entire amount she received from the probate of Mr. Haggerty's estate.

On February 19, 2008, Ms. Haggerty filed a Form 8857, Request for Innocent Spouse Relief with the Internal Revenue Service ("IRS"), requesting relief from joint and several liability for the underpayment of 2006 taxes under I.R.C. § 6015(f). Where the form asked whether she was the victim of spousal abuse during the year in question, she checked "No"; she likewise checked "No" where the form asked whether she had any problems with her mental or physical health at the time of signing or at the present time.

On March 26, 2009, the IRS denied Ms. Haggerty's request for relief. Ms. Haggerty appealed and on December 5, 2011, the Tax Court issued an opinion sustaining the Commissioner's determination that Ms. Haggerty was not entitled to innocent spouse relief. We affirm.

## II.

This court applies the same standard of review to decisions of the Tax Court as we apply to district court decisions. *Cheshire v. Comm'r*, 282 F.3d 326, 332 (5th Cir. 2002). Issues of law are reviewed *de novo*, and findings of fact are reviewed for clear error. *Park v. Comm'r*, 25 F.3d 1289, 1291 (5th Cir. 1994). We review the decision to deny equitable relief under § 6015(f) for abuse of discretion. *Cheshire*, 282 F.3d at 338.

## III.

Internal Revenue Code § 6015(f) provides in relevant part that if "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either) . . . the Secretary may relieve such individual of such liability."[1] The

---

[1] Because Ms. Haggerty's return correctly stated the amount due but showed it as not being fully paid, she was potentially eligible for "innocent spouse" relief only under § 6015(f). Relief under the other prongs of the statute, §§ 6015(b) and (c), is limited to situations where

No. 12-60080

Commissioner has issued revenue procedures to guide courts in determining whether a requesting spouse is entitled to relief from joint and several liability. Revenue Procedure 2003-61 at § 4.03 provides a list of eight nonexclusive factors to consider in deciding whether it would be inequitable to hold a spouse requesting relief liable for the underpayment of taxes. Rev. Proc. 2003-61, 2003-2 C.B. 296, 2003 WL 21708514. No single factor is determinative; all relevant factors are to be considered and weighed. Those listed factors are as follows: (1) Marital status, (2) Economic hardship, (3) Knowledge or reason to know, (4) Nonrequesting spouse's legal obligation, (5) Significant benefit, (6) Compliance with income tax laws, (7) Abuse, and (8) Mental or physical health. *Id.* The Taxpayer bears the burden of proving that she meets the conditions for innocent spouse relief. *Cheshire,* 282 F.3d at 332.

The Tax Court concluded that (1) and (6) favored relief, while (2), (3), and (5) weighed against relief. The other factors—(4), (7), and (8)—were neutral, and the Tax Court concluded it would be fair to hold Ms. Haggerty liable for the 2006 underpayment of taxes.

**(1) Marital Status:** This factor considers whether the requesting spouse is separated or divorced from the nonrequesting spouse. The Tax Court found being widowed is tantamount to being separated or divorced. *See, e.g.*, *Rosenthal v. Comm'r*, T.C. Memo. 2004-89, 2004 WL 596111, at *8 & n.10. This factor favors Ms. Haggerty.

**(2) Economic Hardship:** This factor considers whether the requesting spouse will suffer economic hardship if relief is not granted. "Economic hardship" is the inability to pay reasonable basic living expenses if the requesting spouse is held liable for the tax owed. Treas. Reg. § 301.6343-1(b)(4). The Tax Court found this factor weighed against Ms. Haggerty.

---

the return incorrectly understates the couple's true tax liability.

No. 12-60080

Ms. Haggerty reported monthly income of $8,682 ($3,331.12 monthly income and $5,350.96 pension payments from her husband's retirement plan) and monthly expenses of $7,147 (which includes, without further explanation, $2,550 for "credit cards"). This leaves over $1,500 in monthly income in excess of her expenses. As the Tax Court noted, she owns her home free and clear of any mortgages and has no delinquent accounts.

Ms. Haggerty argues that her future wages may decrease due to the development of new procedures at the medical office where she works, but she failed to offer any evidence to quantify any changes to her income. She further argues that in order to pay the liability she would have to either enter into an installment agreement or borrow against the equity in her home, either of which would cause her hardship. These arguments must fail, specifically in light of the fact that this factor applies if satisfaction of the tax "in whole or *in part* will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses." Rev. Proc. 2003-61, § 4.03(2)(a)(ii) (referencing § 4.02(1)(c), which in turn refers to Treas. Reg. § 301.6343-1(b)(4)) (emphasis added). There is nothing to suggest Ms. Haggerty could not at least make periodic monthly payments to decrease her tax liability. This factor weighs against Ms. Haggerty.

**(3) Knowledge or Reason To Know:** In an underpayment case—such as here where the income tax liability was properly reported but not paid—this factor considers "whether the requesting spouse did not know and had no reason to know that the nonrequesting spouse would not pay the income tax liability." Rev. Proc. 2003-61, § 4.03(2)(a)(iii)(A). The Tax Court found this factor weighed against Ms. Haggerty because she knew of the tax liability at the time the return was filed.

As Ms. Haggerty frames the issue, this should favor relief because it was not until she "received, and signed, the completed 2006 income tax return . . . that she knew, or had reason to know, Mr. Haggerty failed to withhold taxes

5

from the liquidation of the IRA and spent the funds needed to pay the tax liability caused by the liquidation."[2] Thus, she argues the relevant fact here is that she did not know or have reason to know that Mr. Haggerty did not withhold taxes when he liquidated the IRA and did not keep sufficient money to pay the 2006 tax liability.

The Commissioner argues that because Mr. Haggerty died seven months before Ms. Haggerty filed and signed the return, she obviously knew her late husband would not pay the tax liability. The Commissioner contends that Mr. Haggerty's exclusion of Ms. Haggerty from the finances during his life would be relevant only in an understatement or deficiency case where the requesting spouse does not know about omitted income, but it is not relevant here in an underpayment case where the tax liability is correctly recorded but remains unpaid.

Neither party cites any case in its briefs to support its interpretation of this factor. The most instructive discussion of this factor in a widowed spouse, underpayment context that has come to our attention is *George v. Commissioner*, T.C. Memo. 2004-261, 2004 WL 2601319. In *George*, a widowed wife argued she did not know or have reason to know when she signed her tax return that the taxes would not be paid because she "believed that Mr. George had settled the tax liability prior to his death." *Id.* at *3. The Tax Court held that by "signing the joint returns, petitioner is charged with constructive knowledge of the amount shown on the returns as tax due" and that "[b]ecause Mr. George was deceased at the time petitioner signed the returns in 2000, petitioner at that time could

---

[2] Of course prior to this Ms. Haggerty did find out that Mr. Haggerty liquidated the IRA and used it to pay off the second lien.

not have relied on her spouse to pay the liability," and thus knew the liability would not be paid. *Id.* at *4, 6-7.[3]

While it is clear that Ms. Haggerty knew the tax liability had not been paid when she signed the return and she knew that her deceased husband would not pay the income tax liability, subsection (C) of this factor may provide some mitigation to a requesting spouse like Ms. Haggerty despite knowledge that the tax liability will not be paid by the nonrequesting spouse.[4] For example, one of the listed considerations is "the requesting spouse's degree of involvement in the activity generating the income tax liability." Rev. Proc. 2003-61, § 4.03(2)(a)(iii)(C). Based on the Tax Court's finding, Ms. Haggerty was not involved in the activity generating the income tax liability—the liquidation of

---

[3] *See also Sommer v. Comm'r*, No. 4664-09S, 2010 WL 5395628, at *3-4 (U.S. Tax Ct. Dec. 28, 2010) (unpublished) ("Mrs. Sommer signed the return after her husband died. . . . Mrs. Sommer asserted that she did not know that the tax would not be paid because she reasonably believed that her husband had set aside funds for that purpose. . . . After Mr. Sommer died in June 2006, Mrs. Sommer assumed responsibility for filing the joint return and remitting payment for the 2005 tax liability. . . . [W]hile Mrs. Sommer may have initially believed that there were sufficient funds to pay the 2005 liability, soon after her husband's death and before the signing and filing of the return she must have discovered that, in fact, there were insufficient funds. . . . Since Mrs. Sommer was primarily responsible for the filing of the return and in the best position to know whether the tax would be paid, this factor, knowledge or reason to know, favors denial of relief.").

[4]

> (A) *Underpayment cases*. In the case of an income tax liability that was properly reported but not paid, whether the requesting spouse did not know and had no reason to know that the nonrequesting spouse would not pay the income tax liability.
>  . . . .
> (C) *Reason to know*. For purposes of (A) . . . above, in determining whether the requesting spouse had reason to know, the Service will consider the requesting spouse's level of education, any deceit or evasiveness of the nonrequesting spouse, the requesting spouse's degree of involvement in the activity generating the income tax liability, the requesting spouse's involvement in business and household financial matters, the requesting spouse's business or financial expertise, and any lavish or unusual expenditures compared with past spending levels.
> Rev. Proc. 2003-61, § 4.03(2)(a)(iii)(A, C).

the IRA—and she did not know that Mr. Haggerty derived income from this liquidation when he received it.

However, regardless of whether we view this factor as neutral or as weighing against Ms. Haggerty, in light of the other factors, particularly our conclusion that Ms. Haggerty did receive a significant economic benefit from the unpaid income tax liability (as discussed below), the weight given this factor does not affect the outcome in this case.

**(4) Nonrequesting Spouse's Legal Obligation To Pay the Outstanding Liability**:   The Tax Court found that there was no legal obligation on the part of Mr. Haggerty to pay the outstanding income tax liability under a divorce decree or agreement because the Haggertys remained married until he died. This factor is neutral. *See, e.g.*, *Bland v. Comm'r*, T.C. Memo. 2011-8, 2011 WL 94742, at *5.

**(5) Significant Economic Benefit:**  This factor considers whether the requesting spouse received significant benefit beyond normal support from the unpaid income tax liability. The Tax Court found this weighed against Ms. Haggerty because she received a significant economic benefit when Mr. Haggerty paid off the second mortgage against their home. This court has stated that "[t]he most important factor in determining inequity is whether the spouse seeking relief 'significantly benefitted' from the understatement of tax." *Cheshire*, 282 F.3d at 338 (quoting *Reser v. Comm'r*, 112 F.3d 1258, 1270 (5th Cir. 1997)).

Ms. Haggerty argues that she did not receive a significant benefit from Mr. Haggerty's paying off the second lien using the liquidated IRA funds. She says this was a "wash" and that the two transactions offset each other and as a whole actually *decreased* her net worth because of the amount of the fees charged in the liquidation plus the amount of tax liability generated. This is unpersuasive

as the relevant inquiry is whether the requesting spouse received significant benefit, not whether she ultimately received a net benefit.

Further, our decision in *Cheshire* controls here. In *Cheshire*, the nonrequesting spouse used $99,425 in untaxed retirement distributions to pay off the mortgage on the family home and the requesting spouse received the home as part of the divorce settlement. *Id.* This court affirmed the Tax Court's denial of innocent spouse relief, holding that the "Commissioner could have reasonably concluded upon these facts that Appellant received significant benefit from the tax understatement." *Id.*

Ms. Haggerty cites several Tax Court cases as standing for the proposition that making mortgage payments on a marital home rather than using the funds to pay taxes does not constitute a significant economic benefit beyond normal support. These cases, however, are not helpful to Ms. Haggerty as they discuss making routine, monthly mortgage payments during the tax years in question and do not discuss paying off a mortgage in a lump sum payment, as is the case here and was the case in *Cheshire*.[5]

Ms. Haggerty contends that she "did not want Mr. Haggerty to take out the loan, did not receive any of the loan proceeds, [did] not know what Mr. Haggerty did with any of the loan proceeds and did not benefit from the loan in any manner." Although we sympathize with Ms. Haggerty's situation, she did sign the promissory note used to obtain the loan, and it is difficult to argue that

---

[5] *See, e.g.*, *Williams v. Comm'r*, T.C. Summ.Op. 2009-19, 2009 WL 321551, at *6 (finding "payment of the mortgage does not provide a basis for finding significant benefit to petitioner beyond normal support [where] the unpaid tax represents only 4 months of mortgage payments"); *Hayes v. Comm'r*, T.C. Memo. 1975-223, 1975 WL 2843 (finding petitioner did not benefit significantly when she received the marital home upon which mortgage payments had been made during the three years of unpaid tax liability); *cf. Mitchell v. Comm'r,* 292 F.3d 800, 807 (D.C. Cir. 2002) ("In this case, petitioner significantly benefitted from the omitted income. Among other things, she made repairs and improvements to her residence; she paid down the mortgage . . . ." (quoting *Mitchell v. Comm'r*, T.C. Memo. 2000-332, 2000 WL 1595695, at *6)).

she did not receive a significant benefit when paying off the lien allowed her to own her home free and clear and absolved her of any personal liability on the loan.[6] Thus, this factor weighs against Ms. Haggerty.

**(6) Subsequent Compliance with Income Tax Laws:** This factor considers whether the requesting spouse made a good faith effort to comply with income tax laws in subsequent years. The Tax Court credited Ms. Haggerty's testimony that she complied with all federal income tax laws since 2007. This factor favors Ms. Haggerty.

**(7) Abuse:** This factor considers whether the nonrequesting spouse abused the requesting spouse. If so, the presence of abuse favors relief; if not, this factor is neutral and will not weigh against relief. The Tax Court acknowledged that Mr. Haggerty "verbally abused [Ms. Haggerty] and would get angry if she ever asked about his money," but it found that "[a]lthough of concern, there is not enough evidence to find that this factor weighs in favor of [Ms. Haggerty]." The Tax Court did not err in concluding that Ms. Haggerty failed to carry her burden in proving abuse: Ms. Haggerty was the only witness at trial and she did not testify about the verbal abuse with any specificity, she explicitly denied any physical abuse, and when she signed the tax return she was under no duress and could not have feared retaliation from Mr. Haggerty because he was deceased at the time of signing. This factor is neutral.

**(8) Mental or Physical Health**: This factor considers whether a requesting spouse was in poor mental or physical health on the date of signing the return or at the time of requesting relief. If so, this factor will weigh in favor of a requesting spouse; if not present this factor is neutral. Ms. Haggerty argues

---

[6] *See Dosek v. Comm'r*, T.C. Memo. 1971-160, 1971 WL 2246 (holding that the discharge of indebtedness was of significant direct benefit to the requesting spouse because she was liable in her individual capacity under the promissory notes evidencing such indebtedness and following the execution of the discharge of the indebtedness agreement her liability under the promissory notes ceased).

No. 12-60080

the Tax Court erred in finding this factor neutral because she was distraught and grieving over her husband's death and in a "weak and vulnerable mental state." The Tax Court had ample grounds for concluding Ms. Haggerty failed to carry her burden in proving she was in poor mental health: she checked "No" on her IRS form requesting relief where the form asked whether she had any problems with her mental or physical health at the time of signing or at the present time; she did not introduce any evidence of any mental illness or any mental health treatment; and she admitted on cross examination that she is in good health. Because she failed to prove she suffered from poor mental health, this factor is neutral.

We find that the Tax Court did not err in concluding that Ms. Haggerty was not entitled to relief as two factors favor relief, three of the factors are neutral, and two factors weigh against relief.[7] Notably, the Significant Benefit factor—which this court has held is "the most important factor"—weighs against relief.

Finally, Ms. Haggerty argues that we should apply an IRS Notice ("Notice") issued on January 5, 2012, proposing a new Revenue Procedure(Notice 2012-8, 2012-4 I.R.B. 309, 2012 WL 29100) with revised factors, intended to update and supersede Revenue Procedure 2003-61. While the Tax Court decision here was filed on December 5, 2011, and the Notice was not issued until January 5, 2012, Ms. Haggerty nevertheless argues that the Notice, which provides updated guidance for considering and weighing the equitable factors, should apply.

On similar facts the Sixth Circuit in *Karam v. Commissioner* rejected this same argument: "The Notice does not instruct or suggest that the proposed update to Rev. Proc. 2003-61 be retroactively applied to a case already decided

---

[7] And the Knowledge or Reason To Know factor is either a neutral factor or one weighing against relief.

11

No. 12-60080

by the tax court and on appeal to a circuit court." No. 11-2633, 2012 WL 5395172, at *3 n.4 (6th Cir. Nov. 5, 2012).[8]

We agree with the Commissioner that there is good reason not to apply the proposed Revenue Procedure here as it is still a work in progress and neither the IRS nor the Tax Court has had the opportunity to apply the proposed Revenue Procedure to the facts of this case.

## IV.

For the reasons discussed above, we AFFIRM the judgment of the Tax Court.

---

[8] And in *Sriram v. Commissioner*, the Tax Court continued to apply the factors in Rev. Proc. 2003-62 "in view of the fact that the Notice's proposed revenue procedure is not final and because the comment period under the notice only recently closed." T.C. Memo. 2012-91, 2012 WL 1021315, at *3 n.7. *See also Deihl v. Comm'r*, T.C. Memo. 2012-176, 2012 WL 2361518, at *10 (following *Sriram*); *Hudgins v. Comm'r*, T.C. Memo. 2012-260, 2012 WL 3964890, at *4-5 (same); *Yosinski v. Comm'r*, T.C. Memo. 2012-195, 2012 WL 2865808, at *4 n.9 (same).